BRIAN KENNER & another[1] vs. ZONING BOARD OF APPEALS OF
CHATHAM & others.[2]

Suffolk. December 7, 2010. - March 11, 2011.

Present: IRELAND, SPINA, COWIN, CORDY, & GANTS, JJ.

*Zoning,* Special permit. By-law. *Practice, Civil,* Standing. *Words,* "Aggrieved
party."

In an action brought in Land Court challenging the issuance by a local zoning
   board of appeals of a special permit for the demolition, reconstruction, and
   expansion of a home on certain property, there was no clear error in the
   judge's ultimate finding that the plaintiffs, the owners of abutting property,
   were not aggrieved persons such that they had standing to challenge the
   board's issuance of the special permit, where the plaintiffs, who alleged
   that the new home would block their ocean view, failed to sustain their
   burden of putting forth credible evidence to support their claim that the
   proposed seven-foot increase in height of the new home would cause them
   to suffer a particularized injury or would have a detrimental impact on the
   character of the neighborhood [117-123]; further, neither the plaintiffs' al-
   legations of diminution in value property [123-124] nor their allegations
   regarding traffic concerns [124] constituted a basis for standing.

CIVIL ACTION commenced in the Land Court Department on
July 10, 2006.

The case was heard by *Charles W. Trombly,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Daniel P. Dain* for zoning board of appeals of Chatham.

*William F. Riley* for Louis Hieb & another.

*Michael D. Ford (Jeffrey M. Ford* with him) for the plaintiffs.

SPINA, J. In June, 2006, the zoning board of appeals of Chat-
ham (board) granted a special permit to Louis and Ellen Hieb
(Hiebs) for the demolition, reconstruction, and expansion of
their house located at 25 Chatharbor Lane in South Chatham

[1]Carol Kenner.
[2]Louis Hieb and Ellen Hieb.

(Hieb property). The plaintiffs, Brian and Carol Kenner (Kenners), owners of real property at 18 Chatharbor Lane (Kenner property), challenged the issuance of the permit by filing a complaint in the Land Court against the board and the Hiebs. In their answer, the Hiebs requested that the complaint be dismissed because the Kenners were not "aggrieved" parties within the meaning of G. L. c. 40A, § 17, and, therefore, had no standing to bring their action. After a trial, which included a view of the properties, a judge concluded that the Kenners lacked standing to challenge the issuance of the permit, and, even if they did have standing, they failed to show that the board had acted improperly. Judgment entered for the Hiebs. The Appeals Court reversed in an unpublished memorandum and order issued pursuant to its rule 1:28. See Kenner v. Zoning Bd. of Appeals of Chatham, 76 Mass. App. Ct. 1110 (2010). We granted the joint application for further appellate review filed by the Hiebs and the board. We conclude that the Kenners lacked standing to obtain judicial review of the board's decision and, accordingly, need not reach the merits of this case.

1. Background. The Hieb property, which abuts the Atlantic Ocean, consists of 13,237 square feet, most of which is nonbuildable marshland. A single-family house is located on a portion of the approximately 2,200 square feet of the property that is suitable for building. The Kenner property lies to the north of the Hieb property, directly across Chatharbor Lane, such that the Hieb property is located between the Kenner property and the Atlantic Ocean. On the Kenner property is a single-family home. The special permit sought and secured by the Hiebs allows them to raze their existing house and construct in the same footprint a new house that will be seven feet taller than their existing one.

In considering the Kenners' challenge to the issuance of the special permit, the judge stated that because the Kenners were abutters to the Hieb property, they were presumed to be "aggrieved persons" with standing to seek judicial review of the board's decision. However, the judge continued, once the Hiebs challenged the Kenners' standing, the Kenners were required to present credible evidence to substantiate their particularized claims of harm to their legal rights. This, in the opinion of the

judge, the Kenners failed to do. The judge stated that the Kenners' contentions that the increased height of the Hiebs' new house would block light and ocean breezes to the Kenner property and would cause traffic problems in the neighborhood were either generalized concerns, not particular to the Kenners, or were speculative. As to the Kenners' contention that the increased height of the Hiebs' new house would obstruct the Kenners' view of the ocean, the judge agreed that this constituted a claim of individualized harm and stated that § V.B.5 of the Protective By-Law of the Town of Chatham (2007) required the board to consider, when deciding whether to grant a special permit, the impact of a proposed structure on views, vistas, and streetscapes. However, the judge concluded that any impact of the increased height of the Hiebs' new house on the Kenners' view of the ocean was de minimis and, as such, was not sufficient to confer standing on the Kenners. Finally, the judge stated that the Kenners' evidence pertaining to a purported diminution in the value of their property as a consequence of the Hiebs' new house was unsound and speculative, particularly where their alleged loss of view was insignificant.

2. *Standing based on obstruction of ocean view.* The Kenners first contend that the Hiebs' new house, which will be seven feet taller than their existing house, will obstruct the Kenners' view of the ocean. They assert that this negative impact on their property constitutes a particularized harm, separate from the general concerns of the neighborhood as a whole. As such, the Kenners continue, they are "aggrieved persons" and, therefore, have standing to challenge the board's issuance of a special permit to the Hiebs. We disagree.

General Laws c. 40A, § 17, states that "[a]ny person aggrieved by a decision of the [zoning] board of appeals . . . may appeal to the land court department . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk." A "person aggrieved" is one who "suffers some infringement of his legal rights." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996), citing *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430 (1949). As pertinent to the circumstances here, landowners directly across the street from a

property on which changes are proposed enjoy a rebuttable presumption that they are persons aggrieved. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra* at 721-722. See also G. L. c. 40A, § 11 (defining "parties in interest" entitled to notice of public hearing under zoning law as including "owners of land directly opposite [subject property] on any public or private street").

If standing is challenged, and evidence is offered in support of such challenge, the jurisdictional question will be decided on "all the evidence with no benefit to the plaintiffs from the presumption" of aggrievement. *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957). See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra* at 721. See also *Watros* v. *Greater Lynn Mental Health & Retardation Ass'n*, 421 Mass. 106, 111 (1995) (where no evidence presented to rebut plaintiffs' presumption of standing, plaintiffs entitled to rely entirely on presumed status as aggrieved parties to challenge grant of special permit). A party challenging the presumption of aggrievement "must offer evidence 'warranting a finding contrary to the presumed fact.' " *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 34 (2006), quoting *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 258 (2003). "Once the presumption is rebutted, the burden rests with the plaintiff to prove standing [i.e., aggrievement], which requires that the plaintiff 'establish — by direct facts and not by speculative personal opinion — that his injury is special and different from the concerns of the rest of the community.' " *Standerwick* v. *Zoning Bd. of Appeals of Andover, supra* at 33, quoting *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 132 (1992).

"A review of standing based on 'all the evidence' does not require that the factfinder ultimately find a plaintiff's allegations meritorious. To do so would be to deny standing, after the fact, to any unsuccessful plaintiff. Rather, the plaintiff must put forth *credible* evidence to substantiate his allegations" (emphasis added). *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra*. See *Jepson* v. *Zoning Bd. of Appeals of Ipswich*, 450 Mass. 81, 91 (2007); *Hoffman* v. *Board of Zoning Appeal of Cambridge*, 74 Mass. App. Ct. 804, 809 (2009); *Central St., LLC* v. *Zoning Bd. of Appeals of Hudson*, 69 Mass. App. Ct.

487, 492 (2007). Standing essentially becomes a question of fact for the judge. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra.* "[W]hether a party is 'aggrieved' is a matter of degree . . . and the variety of circumstances which may arise seems to call for the exercise of discretion rather than the imposition of an inflexible rule." *Paulding* v. *Bruins,* 18 Mass. App. Ct. 707, 709 (1984), quoting *Rafferty* v. *Sancta Maria Hosp.,* 5 Mass. App. Ct. 624, 629 (1977). The judge's ultimate findings on this issue will not be overturned unless shown to be clearly erroneous.[3] See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra* at 722; *Central St., LLC* v. *Zoning Bd. of Appeals of Hudson, supra.* See also Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996).

Here, the Hiebs challenged the standing of the Kenners by offering evidence to rebut the Kenners' presumption of aggrievement based on their claim that the Hiebs' new house would block the Kenners' view of the ocean. There was uncontroverted testimony from Karen Kempton, the Hiebs' architect, that the house was redesigned several times in order to lower the ridge height of the new roof such that it would be only seven feet taller than the structure it replaced. She also provided unrebutted testimony, supported by architectural renderings of the Hiebs' new house that were admitted in evidence, that the ridge height of the new roof would be 34.3 feet above sea level. David Clark, a professional engineer, gave uncontroverted testimony that the site plan for the Kenners' house indicated that the top of its foundation was 32.5 feet above sea level. Moreover, several photographs showing various perspectives on the

---

[3]"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 160-161 (1977), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395 (1948). "The authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence. The question for the appellate court under Rule 52 (a) is not whether it would have made the findings the trial court did, but whether 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.' " *Building Inspector of Lancaster* v. *Sanderson, supra* at 161, quoting *Zenith Radio Corp.* v. *Hazeltine Research, Inc.,* 395 U.S. 100, 123 (1969).

Hieb and Kenner properties were admitted in evidence. Once the Hiebs offered this evidence to negate the presumption that the Kenners were aggrieved persons with standing to challenge the issuance of the special permit, which the judge concluded the Hiebs had successfully done, the Kenners had the burden of proving, by direct facts and not speculative evidence, that they would suffer a particularized injury as a consequence of the increased height of the Hiebs' house.

A person aggrieved under G. L. c. 40A must assert "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Harvard Sq. Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989). See *Standerwick* v. *Zoning Bd. of Appeals of Andover, supra* at 27. The right or interest asserted by a plaintiff claiming aggrievement must be one that G. L. c. 40A is intended to protect. See *id.* at 27-28; *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston, supra* at 430-431. Generally speaking, concerns about the visual impact of a proposed structure on an abutting property are insufficient to confer standing. See *Martin* v. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 434 Mass. 141, 146 (2001). See also *Sheehan* v. *Zoning Bd. of Appeals of Plymouth*, 65 Mass. App. Ct. 52, 55 (2005) (plaintiff's concern about visual impact of condominium development on nearby wooded hill not sufficient to impart standing); *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 213 (2003) (plaintiff's concern about aesthetic deterioration caused by construction of 135-foot communications tower beyond scope of interests protected by G. L. c. 40A); *Harvard Sq. Defense Fund, Inc.* v. *Planning Bd. of Cambridge, supra* (concerns about diminished aesthetic views are "matters of general public concern" and are not basis for standing).

However, where a municipality's zoning bylaw specifically provides that the zoning board of appeals should take into consideration the visual impact of a proposed structure, this "defined protected interest may impart standing to a person whose impaired interest falls within that definition." *Martin* v. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, supra* at 146-147 (standing conferred

on abutter to challenge issuance of special permit to church for construction of steeple atop temple where Belmont zoning by-law provided that "[v]iews from public ways and developed properties should be considerately treated in the site arrangement and building design"); *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 688 (1994) (for summary judgment purposes, standing conferred on plaintiffs to challenge issuance of special permit to Cellular One for construction of 190-foot tower where Plymouth zoning bylaw provided that proposed structure could not in any way detract from visual character or quality of neighborhood, and plaintiffs established direct visual impact of proposed tower not only on home but also on neighborhood).

Here, § V.B.5 of the zoning bylaw states that the board, when deciding whether to grant a special permit, shall consider, among other things, the "[i]mpact of scale, siting and mass on neighborhood visual character, including views, vistas and street-scapes." This language does not suggest that the zoning bylaw was designed simply to protect individual homeowners' views of the ocean from their own property. Rather, § V.B.5 addresses the visual impact of a proposed structure, or of changes to an existing structure, on the visual character of the *neighborhood* as a whole. Thus, in order for a plaintiff to establish standing based on the impairment of an interest protected by Chatham's zoning bylaw, the plaintiff would need to show a particularized harm to the plaintiff's own property and a detrimental impact on the neighborhood's visual character. See *Monks* v. *Zoning Bd. of Appeals of Plymouth, supra* at 688-689. As will be discussed shortly, the Kenners did not put forth credible facts to support their allegation that the increased height of the Hiebs' new house will block their view of the ocean. Moreover, apart from the Kenners' unsubstantiated claims and personal opinions, there was no evidence that the increased height of the Hiebs' new house would have a detrimental impact on the visual character of their neighborhood, the interest that the zoning bylaw is designed to protect.

Aggrievement requires a showing of more than minimal or slightly appreciable harm. See, e.g., *Martin* v. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-*

*Day Saints, supra* at 147 (plaintiff had standing under zoning bylaw where "towering" church steeple would be visible from most, if not all, of her property, both during day and when lit at night); *Denneny* v. *Zoning Bd. of Appeals of Seekonk, supra* at 211 (plaintiff must be able to demonstrate factually that there has been "some" infringement of legal rights); *Rogel* v. *Collinson*, 54 Mass. App. Ct. 304, 315 (2002) (standing to appeal from denial of request for enforcement of zoning bylaw with respect to commercial trail rides conferred where "palpable" harms caused by odors and dust produced by horses); *Rinaldi* v. *Board of Appeal of Boston*, 50 Mass. App. Ct. 657, 660 (2001) (burden of establishing standing not satisfied where proposed changes to buildings' use unlikely to cause "significant" increase in traffic and loss of parking spaces); *Butts* v. *Zoning Bd. of Appeals of Falmouth*, 18 Mass. App. Ct. 249, 253 (1984) (intervener had standing as person aggrieved where claim that ocean view would be "completely blocked" by new structure on abutting property not challenged). The adverse effect on a plaintiff must be substantial enough to constitute actual aggrievement such that there can be no question that the plaintiff should be afforded the opportunity to seek a remedy. To conclude otherwise would choke the courts with litigation over myriad zoning board decisions where individual plaintiffs have not been, objectively speaking, truly and measurably harmed. Put slightly differently, the analysis is whether the plaintiffs have put forth credible evidence to show that they will be injured or harmed by proposed changes to an abutting property, not whether they simply will be "impacted" by such changes.

Here, Carol Kenner testified as to her personal opinion that the increased height of the Hiebs' new house "will have an impact on [the] views and vistas" that the Kenners enjoy from the deck of their home.[4] Similarly, Brian Kenner testified that the increased height of the Hiebs' new house will diminish significantly their enjoyment of that property in terms of what the Kenners look at when they sit either at their dining room table or on their screened porch. The Kenners introduced two photographs taken by their neighbor, Steven Wardle, while he stood on the Kenners' porch, looking out toward the ocean.

[4]There was no evidence that the Kenner property had a view easement.

Superimposed on each photograph was a transparent box that purported to show the alleged obstruction of the Kenners' ocean view. On cross-examination, Brian Kenner testified that it was his understanding that Wardle configured the size of the transparent boxes based on Wardle's estimated measurements of the Hiebs' existing home and their proposed new house. Kenner further testified on cross-examination that Wardle's occupation was that of a jeweler.

The judge found that the Hiebs' new house would have the same location footprint and setback as the existing structure, and the increase in height of the new house would be only seven feet. The judge stated that the evidence showed that the increased height of the new house would have a de minimis impact on the Kenners' view of the ocean. The judge had the benefit of a view, which put him in a better position than we to evaluate the potential impact of the increased height of the Hiebs' new house on the Kenner property. Based on our review of the record, including the photographs, we cannot conclude that the judge's ultimate finding that the Kenners were not aggrieved persons such that they had standing to challenge the board's issuance of a special permit to the Hiebs was clearly erroneous.

3. *Standing based on diminution in property value.* Related to the Kenners' contention that the increased height of the Hiebs' new house will block their view of the ocean is their claim that an obstructed ocean view diminishes the value of their property. Diminution in the value of real estate is a sufficient basis for standing only where it is "derivative of or related to cognizable interests protected by the applicable zoning scheme." *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 31-32 (2006). See *Central St., LLC* v. *Zoning Bd. of Appeals of Hudson*, 69 Mass. App. Ct. 487, 492 (2007). Zoning legislation "is not designed for the preservation of the economic value of property, except in so far as that end is served by making the community a safe and healthy place in which to live." *Tranfaglia* v. *Building Comm'r of Winchester*, 306 Mass. 495, 503-504 (1940). "To untether a claimed diminution in real estate values from an interest the zoning scheme seeks to protect would permit any abutter who claims that any change in property use would diminish the value of property to obtain standing to challenge a

zoning decision." *Standerwick* v. *Zoning Bd. of Appeals of Andover, supra* at 32. Conferring standing "in such circumstances would permit any plaintiff to make an 'end run' around the rigorous standing requirements we have consistently recognized." *Id.*, citing *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 431 (1949). Given that, here, the Kenners' view of the ocean is not an interest protected by the town of Chatham's zoning bylaw, and that the judge concluded, in any event, that any impact on their ocean view would be de minimis, the alleged diminution in value of the Kenner property is not a basis for standing.[5]

4. *Standing based on traffic concerns.* The Kenners contend that they have standing to challenge the board's granting of a special permit to the Hiebs based on traffic concerns. More particularly, the Kenners assert that the Hiebs' plan to build a retaining wall along the front of their property will make it impossible for two vehicles to pass each other on Chatharbor Lane such that one will have to back up into the Kenners' driveway or over their property in order to allow the other to pass. Section V.B.8 of the zoning bylaw states that the board, when deciding whether to grant a special permit, shall consider, among other things, the "[i]mpact on traffic flow and safety." As such, the Kenners' traffic concerns are within the scope of the zoning laws. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 722 (1996); *Perez* v. *Board of Appeals of Norwood*, 54 Mass. App. Ct. 139, 139-140 n.3 (2002); *Bedford* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 372, 376-377 (1988). However, the judge found that the Kenners' allegations did not rise above the level of speculation and, therefore, did not constitute a basis for standing. We cannot conclude that the judge's ultimate finding on this issue was clearly erroneous.[6]

---

[5] The judge did not find credible the Kenners' expert witness, Stephen De Castro, a certified real estate appraiser, on the basis that his analysis failed to compare houses in the immediate neighborhood. The judge stated that De Castro's analysis was unsound and speculative, and that a property owner is not entitled to bring an action based on diminution in value deriving from an insignificant loss of ocean view.

[6] Similarly, to the extent not already discussed, the judge's findings that the Kenners presented only generalized concerns and speculation that the increased height of the Hiebs' new house will overshadow the Kenner property were not clearly erroneous.

5. *Conclusion.* The Kenners did not have standing to obtain judicial review of the board's decision to grant the Hiebs a special permit for the demolition, reconstruction, and expansion of their house. As such, the Land Court lacked subject matter jurisdiction over the Kenners' action. See *Planning Bd. of Marshfield* v. *Zoning Bd. of Appeals of Pembroke*, 427 Mass. 699, 703 (1998). The judgment below is vacated, and this case is remanded to the Land Court for entry of a judgment dismissing the Kenners' complaint.

*So ordered.*