Walker, Kenton, J.
INTRODUCTION
This case is a zoning appeal involving five parcels of land located on Sunset Drive, which borders the shore of Glen Echo Lake in Charlton, Massachusetts. The plaintiff, Robert Lemansky (“Lemansky”), filed two cases, which were consolidated on September20,2006, against the defendants, Raymond Mrzyglod, Brian Donegan, Thomas Ciras, Leonard Cardinal, Jr., Candace Sutherland, and Frank Lombardi (collectively the “Municipal Defendants”), as members of the Charlton Zoning Board of Appeals (the “Board”), and Hugh T. Briody, Susan S. Briody (the “Briodys”), John N. Phillips, and Cheryl A. Phillips (the “Phillipses”). In the first case, Docket No. 04-01258, Lemansky asserted three counts: (1) G.L.c. 40A, §17; (2) Declaratory Judgment;[2] and (3) Injunctive Relief. In the second case, Docket No. 06-01660, Lemansky asserted two counts: (1) G.L.c. 40A, §17; and (2) Declaratory Judgment. Essentially, Lemansky requested that the court vacate the Board’s decision granting the Phillipses a permit to construct a single-family home on Parcel Nos. 31 and 32; declare Parcel No. 30 to be in violation of G.L.c. 40A, as it was transferred without Parcel No. 31; and order removal of the Briodys’ and Phillipses’ homes located on Parcel No. 30 and Parcel Nos. 31 and 32, respectively.
On March 13, 2007, the Municipal Defendants, the Phillipses, and the Briodys filed a Motion for Summary Judgment.[3] In response, Lemansky filed an Opposition and Cross Motion for Summary Judgment. On July 25, 2008, the court (McCann, J.) issued the First Supplemental Memorandum of Decision and Order for Judgment (the “Summary Judgment Decision”) [24 Mass. L. Rptr. 482], allowing summary judgment as to the Municipal Defendants and the Phillipses and denying summary judgment as to the Briodys. The matter is currently before the court on the Joint Motion of the Plaintiff, Robert Lemansky, and the Defendants, Hugh and Susan Briody, for Reconsideration of the First Supplemental Memorandum of Decision and Order for Judgment (the “Motion for Reconsideration”).[4]
BACKGROUND
For purposes of this Memorandum of Decision and Order, the court accepts the facts as they are set forth in the Summary Judgment Decision. They are as follows.
The facts revolve around five separate parcels of land located on Sunset Drive, four of which border on the shores of Glen Echo Lake in Charlton, Massachusetts, Parcel Nos. 28, 30, 31, and 32. All four abut the shore of Glen Echo Lake and are on the easterly shoreline of the lake. Parcel No. 15 does not abut the shore of Glen Echo Lake. It is on the easterly side of Sunset Drive directly opposite and across the street from Parcel No. 28. It is diagonally across the street from Parcel Nos. 30, 31, and 32.
The present record title holders to Parcel Nos. 28 and 15 are Lemansky and his wife[,] [Kathleen]. Lemansky is the plaintiff in this action. The Briodys are the present owners of Parcel No. 30. The Phillips[es] are the present owners of Parcel Nos. 31 and 32.
[Lemansky] and his wife . .. acquired title to Parcel Nos. 28 and 15 on July 28, 1976 by deed recorded in Worcester District Registry of Deeds, Book 5990, Page 292. Consideration was $67,500. Lemansky resides at 157 Sunset Drive which is Parcel No. 28. Parcel No. 15 which is diagonally across from his home is a vacant lot.
*102 [The Briodys] own the premises at 141 Sunset Drive, referred to as Parcel No. 30. It is contiguous to and immediately to the southeast of Parcel No. 28 which is owned by Lemansky and his wife.
[The Phillipses] reside at 135 Sunset Drive[,] referred to as Parcel Nos. 31 and 32. Their property is contiguous to and immediately to the southeast of the parcel owned by the Briodys, Parcel No. 30.
[T]he parcels in more recent times have the following history. Parcel No. 30 was conveyed on July 8, 1986 by Howard E. Murgatroid and Jean R. Murgatroid ... to David Lawrence and Dixie Lawrence (the “Lawrences”) by deed recorded in Worcester District Registry of Deeds, Book 9583, Page 190.
The Parcel No. 30 did not then meet the dimensional requirements of the Town of Charlton Zoning Bylaws. However, the parcel was grandfathered under G.L.c. 40A, §6. The Lawrences constructed a single-family house on Parcel No. 30.
On December 3, 1996, Willard Ray Thompson and Frances Dorothy Thompson (the “Thompsons”) conveyed Parcel No. 31 to the Lawrences by deed recorded in Worcester Registry of Deeds, Book 18446, Page 388. That lot did not meet the dimensional requirements of the Zoning Bylaws of the Town of Charlton. It was a vacant lot. Parcel No. 31 was acquired by the Thompsons in 1969. The Thompsons owned no parcel adjacent to it. The lot as owned by the Thompsons was a grandfathered lot as they acquired it before the Zoning [Bylaws] of the Town of Charlton were adopted.
The combined Parcel Nos. 30 and 31 together do not meet the dimensional requirements of the Zoning [Bylaws] of the Town of Charlton for the construction of a single-family house.
On June 15, 2000, the Lawrences sold Parcel No. 30, on which they had built a single-family house to the Briodys for $340,000 by deed recorded in Worcester District Registry of Deeds, Book 22693, Page 249. The Lawrences retained ownership of Parcel No. 31.
On February 7,2001, the Lawrences conveyed Parcel No. 31, the vacant parcel, to their son David A. Lawrence, IV by deed recorded in Worcester District Registry of Deeds, Book 23537, Page 363.
David Lawrence, IV applied for a variance from the . . . [Board] to build a single-family house on Parcel No. 31. On November 12,2002, the... [Board] denied the request for a variance. The reason the application for a variance was denied was that the . . . [Board] determined that Parcel No. 31 was not a buildable parcel having lost its grandfathered rights as a separate parcel when Parcel No. 31 was combined with Parcel No. 30.
On February 15, 2003, David Lawrence, IV sold Parcel No. 31 for $50,000 to the Phillips[es] by deed recorded in Worcester District Registry of Deeds, Book 29072, Page 225.
The Phillips[es] at that time owned Parcel No. 32 which abutted Parcel No. 31. Parcel No. 32 was contiguous to and immediately to the southeast of Parcel No. 31. The Phillips[es] purchased Parcel No. 32 by deed from Impi L. Luukko dated August 18, 1998 and recorded in Worcester District Registry of Deeds, Book 20350, Page 148. Parcel No. 32 is a grandfathered lot under the Charlton Zoning Bylaws. The ownership of Parcel No. 32 was in separate ownership from any adjoining lots since [the zoning bylaws were] enacted in Charlton. The Phillips[es] consolidated Parcel Nos. 31 and 32 by a conveyance to a “straw” of both lots to Edmund A. Neal, III; and then a conveyance of the consolidated lots back to [the] Phillips [es] by Edmund A. Neal, III. . . [on] February 19, 2003.
Independently, Parcel No. 31 and Parcel No. 32 each had 50 feet of frontage on Sunset Drive and 50 feet of frontage on Glen Echo Lake. The boundary lines to the adjacent properties] was approximately 150 feet plus or minus on either side. When consolidated Parcel Nos. 31 and 32 together had a frontage on Sunset Drive of 100 feet and frontage on Glen Echo Lake of 100 feet. Parcel Nos. 31 and 32 as they stood separately each contained 7,500 square feet more or less and combined had in excess of 15,000 square feet more or less.
The Zoning Bylaws in Charlton at present require 150 foot frontage and 40,000 square feet of area for a single-family home in an area defined as [a] R-40 Zoning District. Sunset Drive is located in [a R-40 Zoning] District.
Subsequent to the consolidation of Parcel Nos. 31 and 32, the Charlton Assessor’s Office identified the property on the Assessor’s Cards as Parcel 32 only.
On February 17, 2004, Lemansky requested a determination from the Zoning Enforcement Officer that the sale by the Lawrences to the Briodys of Parcel No. 30, was a violation of the Charlton Zoning Bylaw and the conveyance by the Lawrences to their son of Parcel 31 was also a violation of the Zoning Bylaw as the two Parcels Nos. 30 and 31 had merged as a matter of law when owned in common by the Lawrences.
On February 26, 2004, the Zoning Enforcement Officer denied Lemansky’s request for enforcement. He responded that it was his opinion, as well as Town Counsel, that it was within the building commissioner’s discretion to issue a building permit for Parcel Nos. 31 and 32 as consolidated if an application was made by the Phillips[es].
On March 11, 2004, Lemansky appealed the Zoning Enforcement Officer’s decision to the [Board]. Lemansky sought an enforcement action on the Briody property!,] Parcel No. 30[,] asserting that it had lost its pre-existing nonconforming lot protected status as a result of the sale of Parcel No. 30 to the Briodys without Parcel No. 31. Lemansky stated that *103 . . . the building permit for Phillips[es’] Parcel Nos. 31 and 32 . . . [was] not the subject of . . . [his] complaint but . . . [that it could] be the end result.
The [Board] after a public hearing on May 26, 2004 denied the Administrative Appeal of Lemansky pertaining to the Briody property at 141 Sunset Drive and endorsed the decision of the Zoning Enforcement Officer.
The Phillips [es] were issued a building permit for their parcel for a single-family house on June 21, 2004. They completed construction of their home and received an occupancy permit on June 22, 2005.
Lemansky is the owner of Parcel 28 and resides in that property!.] His Parcel, No. 28, projects out from the properties] adjacent to it and is a point of land on Glen Echo Lake. Lemansky also owns Parcel No. 15 which does not abut Glen Echo Lake and is diagonally across from Lemansky’s residence and also diagonally across from the Briody[s] and Phillips[es’] parcels. The views from parcel 15 are obstructed by the house in which Lemansky lives on Parcel 28 as well as the house in which the Briodys live on Parcel 30.
The Charlton Zoning [Bylaw] does not list “visual impact” as a factor in zoning decisions for the R-40 Zoning District.
On March 28, 2006, Lemansky sought a determination from the Charlton Zoning Enforcement Officer that the property located at 135 Sunset Drive, the Phillips[es’] parcel, consisting of Parcel Nos. 31 and 32, is not a buildable lot. He sought to revoke the building permit and the occupancy permit and requested an order for the removal of the home.
The Zoning Enforcement Officer on April 10, 2006 denied Lemansky’s request for enforcement.
On May 4, 2006, Lemansky appealed the decision of the Zoning Enforcement Officer to the ... [Board]. He sought to overturn the decision of the Zoning Enforcement Officer and to enforce the provisions of the Zoning [Bylaw] against the Phillips[es] by revoking the building permit, revoking the occupancy permit, and ordering the home to be removed from the property.
[The Board] held a hearing on the appeal on June 6, 2006, June 20, 2006, July 11, 2006, July 18, 2006, and on July 25, 2006. On July 25, 2006, the . . . [Board] voted to uphold the decision of the Zoning Enforcement Officer and denied Lemansky’s appeal. Lemansky then appealed the decision of the . . . [Board] to the Worcester Superior Court Civil Action 2006 CV 01660. Lemansky moved to consolidate the two cases which was allowed by the court on September 27, 2006.
DISCUSSION
I.Standard of Review
“A judge has considerable discretion to reconsider prior orders, provided the request is made within a reasonable time.” Commonwealth v. Gonsalves, 437 Mass. 1022, 1022 (2002). In fact, the power to reconsider a case, issue, or question of law remains with the court until the court renders a final judgment. Peterson v. Hopson, 396 Mass. 597, 603 (1940). Under Superior Court Rule 9D, reconsideration of a prior ruling is warranted where there is: (a) newly discovered evidence; (b) a change of circumstances; (c) a change of law; or (d) a plain error of fact or law in the original ruling. Hingham Mut. Fire Ins. Co. v. Travelers Ins. Co., 2006 WL 414610 *1 (Mass.Super. 2006) (Sikora, J.) [21 Mass. L. Rptr. 735], citing Barbosa v. Hopper Feeds, Inc., 404 Mass. 610, 622 (1989); see also Mass.R.Civ.P. 60(b).
II.The Summary Judgment Decision
The Board issued two decisions relevant to this case. On May 26, 2004, the Board denied Lemansky’s request for zoning enforcement as to the Briodys’ property, which would have required removal of their home located on Parcel No. 30. Then, on July 25,2006, the Board denied Lemansky’s request to revoke the Phillipses’ building permit in connection with construction of a single-family home on what is referred to as Parcel Nos. 31 and 32. In the Summary Judgment Decision, the court concluded Lemansky had standing to challenge these Board decisions. More specifically, according to the court, Lemansky had standing because he submitted evidence sufficient to demonstrate “that construction... resulted in loss of view and [a] diminution . . . [in] value of. . . [his] property.” Here, the court concludes that reconsideration of the standing determination is warranted in light of the Supreme Judicial Court’s holding in Kenner v. Zoning Bd of Appeals of Chatham, 459 Mass. 115 (2011).
III.Lemansky’s Standing
Only a “person aggrieved” may challenge a decision of a zoning board of appeals. Watros v. Greater Lynn Mental Health and Retardation Assoc., 421 Mass. 106, 107 (1995). A plaintiff is a “person aggrieved” if he suffers a “definitive violation of a private right, a private property interest, or a private legal interest.” Harvard Square Def. Fund Inc. v. Planning Bd. of Cambridge, 27 Mass.App.Ct. 491, 493, rev. denied, 405 Mass. 1204 (1989); see also Marashlian v. Zoning Bd of Appeals of Newburyport, 421 Mass. 719, 721-22 (1996). More specifically, a plaintiff qualifies as a “person aggrieved” within the meaning of G.L.c. 40A, if he suffers some infringement of his legal rights as a result of the zoning board’s decision. Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 430 (1949). To demonstrate an infringement of his or her legal rights, a plaintiff must put forth credible evidence demonstrating a particularized injuiy flowing from the zoning board’s action that is special and different from the injuiy to the community at large. Butler v. Waltham, 63 Mass.App.Ct. 435, 441 (2005); see also Nickerson v. Zoning Bd of Appeals of Raynham, 53 Mass.App.Ct. 680, 682 (2002). Further, “[t]he right or interest asserted by a plaintiff claiming aggrievement must be one that G.L.c. 40A is intended to protect [against].” *104 Kenner, 459 Mass. at 120, citing Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 27-28 (2006).
In this case, Lemansky claims that his lake view from Parcel No. 15 has been obstructed and thus, the value of this parcel has been diminished. The Supreme Judicial Court addressed an almost identical claim in Kenner, concluding visual impact and diminution in property value are not sufficient to confer standing unless these injuries are specifically tied to an interest protected by a municipality’s zoning bylaw.
As explained by the Supreme Judicial Court, “[g]en-erally speaking, concerns about . . . visual impact. . . are insufficient to confer standing.” Kenner, 459 Mass. at 120, citing Martin v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, 434 Mass. 141, 146 (2001); see also Sheehan v. Zoning Bd. of Appeals of Plymouth, 65 Mass.App.Ct. 52, 55 (2005) (stating plaintiffs concern about visual impact of condominium development not sufficient to confer standing). Indeed, under Kenner, only “where a municipality’s zoning bylaw specifically provides that the zoning board should take into consideration the visual impact” will “this ‘defined protected interest. . . impart standing!.]’ ” 459 Mass. at 120, quoting Martin, 434 Mass. at 146-47. Thus, in keeping with the holding in Kenner, the court must examine whether visual impact and/or view is an interest against which the Charlton Zoning Bylaw protects.
An examination of the Charlton Zoning Bylaw reveals that “visual impact” is not a factor to be considered in making zoning decisions within the R-40 Zoning District where the parcels at issue are located. Rather, the purpose of the R-40 Zoning District is “(t]o provide sites for low density residential development with respect to the existing character of the neighboring homes and properties, including compatible related home orientated activities and pursuits in a rural environment.” Charlton Zoning Bylaw, §3.1.5.2. There is no mention of visual impact and/or view. Since there is no indication that, in making permitting decisions, the Charlton Zoning Bylaw required the Board to consider the visual impact or loss of view resulting from proposed structures, the obstruction of the view from Parcel No. 15 is not an injury that can confer standing on Lemansky.
Related to his argument that his view from Parcel No. 15 has been obstructed, is Lemansky’s claim that this loss of view has diminished the value of Parcel No. 15. The Supreme Judicial Court also addressed this issue in Kenner.
According to Kenner, “(d]iminution in the value of real estate is a sufficient basis for standing only where it is ‘derivative of or related to cognizable interests protected by the applicable zoning scheme.’ ” Kenner, 459 Mass. at 123, quoting Standerwick, 447 Mass. at 31-32. In making this statement, the Supreme Judicial Court explained that, “]z]oning legislation ‘is not designed for the preservation of the economic value of property,except insofar as that end is served by making the community a safe and healthy place in which to live.’ ” Kenner, 459 Mass. at 123, citing Tranfaglia v. Building Comm’s of Winchester, 306 Mass. 495, 503-04 (1940). And also stated that, “]t]o untether a claimed diminution in real estate values from an interest the zoning scheme seeks to protect would permit any abutter who claims that any change in property use would diminish the value of property to obtain standing to challenge a zoning decision.” Kenner, 459 Mass. at 123-24, quoting Standerwick, 447 Mass. at 32. Ultimately, the Supreme Judicial Court concluded that this “end run” around the standing requirements is not permitted. Kenner, 459 Mass. at 124. Therefore, “(g]iven that, here . . . [Lemansky’s] view of the . . . [lake] is not an interest protected by the town of . . . [Charlton’s] zoning bylaw ... the alleged diminution in value of.. . [Parcel No. 15] is not a basis for standing.” Id.
Because Lemansky lacks standing to challenge the Board’s decisions, the Briodys are entitled to summary judgment in their favor and the Motion for Reconsideration will be allowed to reflect such.
ORDER
For the reasons mentioned above, it is hereby ORDERED that the Motion for Reconsideration be ALLOWED insofar as it pertains to the Briodys. It is further ORDERED that summary judgment enter in favor of the Briodys.[5]

The defendants in the second case are the same as in the first case: Raymond Mrzyglod, Brian Donegan, Candace Sutherland, William Johnson and Frank Lombardi, as they are Members of the Zoning Board of Appeals of the Town of Charlton, Hugh T. Briody, Susan Briody, John N. Phillips, Cheryl A. Phillips, and Curtis Meskus, as he is the Building Commissioner for the Town of Charlton.

he Briodys, who were representing themselves pro se, and the Municipal Defendants did not file their own motions; rather, with the court’s permission, they joined in the Phillipses’ Motion for Summary Judgment.

On July 13, 2011, after hearing, the court (Kenton-Walker, J.) issued the Order on Joint Motion for Reconsideration, a preliminary order, stating that the court would be reconsidering the Summary Judgment Decision. At that time, the parties were given an opportunity to file supplemental pleadings to address the issues raised by the Motion for Reconsideration. The court, however, has received no such pleadings.

The court acknowledges that the determination that Lemansky lacks standing to challenge the Board’s decisions could have impacted his claims against the other parties, namely, the Phillipses and the Municipal Defendants. However, because judgment entered in favor of these parties on other grounds any potential impact is immaterial.