Following a hearing on cross motions for summary judgment, a judge of the Land Court issued two judgments[4] that dismissed the plaintiff's complaints thereby affirming two decisions of the defendant Manchester-by-the-Sea board of appeals (board). The plaintiff, Joseph M. Lazarek in his capacity as trustee of Cliff's Realty Trust (CRT), appeals, claiming that the site at issue lost protected zoning status through abandonment or discontinuance and that the board was not authorized to modify a 2011 special permit because the modifications differed markedly from the initial approved project. The defendant Cathleen E. Kavanaugh, trustee of Smith's Point Realty Trust (SPRT), counters that the site is a lawfully nonconforming structure, the site was not abandoned, the board had authority to modify the special permit, and CRT lacks standing. Standing is "a 'jurisdictional' prerequisite to proceeding with the case in the sense that [the plaintiff's] status as an aggrieved person is an essential prerequisite to judicial review." Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626, 629 (2018), and cases cited. We agree with SPRT that CRT lacked standing to maintain this action and therefore reverse the judgments and remand the cases for entry of judgments that dismiss the plaintiff's complaints for lack of standing.
The site. The site at issue is a 100 foot tall World War II-era military tower (tower) located in Manchester-by-the-Sea (town). SPRT owns the tower, which was used during wartime as a lookout for spotting enemy vessels. Although the tower never functioned as a lighthouse, it was elongated from ten stories to twelve and its exterior was renovated to make it look like a lighthouse in 1987. More recently, the entirety of the tower's interior was renovated to comprise living space and the tower was connected to an existing dwelling via a corridor. The most recent renovations are at issue here.
In 1943, the United States government exercised its eminent domain powers to take a portion of a parcel of land in order to construct the tower. The following year, the town enacted its first zoning bylaw under which the tower was far higher than acceptable in its surrounding residential neighborhood.[5] The bylaw, however, included a "grandfathering" provision that exempted the tower from the requirements set forth in the bylaw because the tower preexisted its enactment. Thus, the tower was a lawfully nonconforming structure.
The government stopped using the tower in 1945 and sold it in 1951. It was then resold a number of times between 1951 and 1984.[6] In 1984, the then-owners, John and Mary Jo Donovan, added two levels to the tower, without obtaining a permit, creating the resemblance of a lighthouse. They also received a building permit in 1987 to enlarge windows and the lower deck in the tower.[7]
In 2009 the Donovans sold the property to Donald Besser. Besser made minor improvements to the tower, including replacing windows, painting the exterior and part of the interior, landscaping, infilling a pond, and renovating a preexisting tennis court. In 2011, Besser obtained a special permit for a project that allowed him to demolish the existing house and construct a new house that would be attached to the tower.[8] The board also granted Besser's request to change the status of the tower from accessory to residential. No appeal was taken from the special permit. Besser never commenced the demolition, however, and instead he sold the property in 2014 to the current owner, SPRT.
In July 2014, SPRT obtained a building permit to renovate the interior of the tower and convert it into living space. As a result, two bedrooms and two bathrooms were added to the tower, as well as a bar and entertainment areas.[9] In response to the interior renovations, CRT sought zoning enforcement pursuant to G. L. c. 40A, § 7. CRT wrote to the building inspector on two occasions requesting revocation of the special permits, a cease and desist order, and the removal of any improvements. CRT claimed that the tower would constitute a second residence on the property in violation of the town's bylaw. The building inspector refused to take any action and CRT appealed to the board, which affirmed the inspector's decision. CRT filed a complaint in the Land Court pursuant to G. L. c. 40A, § 17.
In December 2016, SPRT filed for a modification of Besser's 2011 special permit seeking to construct a corridor connecting the tower to the existing corridor between the residence and a garage. After a public hearing, the board granted the modification in March of 2017.[10] SPRT then completed the renovations. CRT filed a second complaint in the Land Court pursuant to G. L. c. 40A, § 17.
Standing. In order to proceed with an action under G. L. c. 40A, § 17, a plaintiff must maintain the status of an aggrieved person. See Talmo, 93 Mass. App. Ct. at 629 ; Nickerson v. Zoning Bd. of Appeals of Raynham, 53 Mass. App. Ct. 680, 681 n.2 (2002). The plaintiff bears the burden of proving standing. 81 Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 701 (2012), citing Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 34-35 & n.20 (2006). A party may demonstrate standing in one of two ways: (1) by establishing that they are a "person aggrieved" by a decision of a zoning board of appeals or special permitting authority; or (2) by demonstrating that they are a "municipal officer or board" with "duties relating to the building code or zoning within the same town as the subject land." Planning Bd. of Marshfield v. Zoning Bd. of Appeals of Pembroke, 427 Mass. 699, 703 (1998). Only the first method is relevant here.
An aggrieved person is one who "suffers some infringement of his legal rights." 81 Spooner Rd., LLC, 461 Mass. at 700, quoting Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996). "Of particular importance, the right or interest asserted by a plaintiff claiming aggrievement must be one that the Zoning Act is intended to protect, either explicitly or implicitly." 81 Spooner Road, LLC, supra at 700. See Dwyer v. Gallo, 73 Mass. App. Ct. 292, 295 (2008) ("To succeed, the [plaintiffs] must show that the zoning relief granted adversely affected them directly and that their injury is related to a cognizable interest protected by the applicable zoning law"). "[T]he term 'person aggrieved' should not be read narrowly," Marashlian, supra at 721, but "[a]ggrievement requires a showing of more than minimal or slightly appreciable harm." Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 121 (2011). "The injury must be more than speculative." Marashlian, supra at 721. "The adverse effect on a plaintiff must be substantial enough to constitute actual aggrievement such that there can be no question that the plaintiff should be afforded the opportunity to seek a remedy. To conclude otherwise would choke the courts with litigation over myriad zoning board decisions where individual plaintiffs have not been, objectively speaking, truly and measurably harmed." Kenner, supra at 122.
Abutters, or qualified abutters of abutters entitled to notice, enjoy a presumption of standing as "persons aggrieved" under G. L. c. 40A, § 17. See Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 257-258 (2003). In order to rebut the presumption of standing, the defendant generally must offer evidence "warranting a finding contrary to the presumed fact." Id. at 258, quoting Watros v. Greater Lynn Mental Health & Retardation Ass'n, 421 Mass. 106, 111 (1995). CRT argues that SPRT failed to offer evidence to rebut that presumption and that as a result, no further inquiry is required. SPRT counters that CRT was unable to articulate a particularized injury and therefore the presumption of standing receded. Standerwick, 447 Mass. at 35-36. We agree with SPRT. A defendant may rely on the plaintiff's lack of evidence to overcome the presumption of standing. Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. 551, 554 (1999). Moreover, a rebuttable presumption "continues only until evidence has been introduced which would warrant a finding contrary to the presumed fact." Standerwick, supra at 34, quoting Scaltreto v. Shea, 352 Mass. 62, 64 (1967).
CRT cites three alleged harms in support of its claim: infringement on privacy, increased noise, and increased light. As to the privacy claim, CRT argues that someone in the tower could look down onto its property, thus invading its privacy. Such a claim does not rise to an injury as our common law requires. See Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570, 573 (2016) (more than minimal or slight appreciable harm is required); Kenner, 459 Mass. at 122 (not enough that plaintiff will be impacted by changes). In addition, a neighbor's ability to see onto CRT's property is not a harm that is protected by the town's zoning bylaws. Importantly, the tower existed at its present height -- 100 feet -- when CRT purchased the property in 2013. The claim here is that the internal renovations created the harm, however, "[t]he injury must be personal to the plaintiff and supported by specific facts." Valcourt v. Zoning Bd. of Appeals of Swansea, 48 Mass. App. Ct. 124, 127 (1999). Here, it is not. As other nearby properties can be seen from the tower, CRT's claim of injury is not special and distinct from the concerns of the rest of the community. See Barvenik v. Aldermen of Newton, 33 Mass. App. Ct. 129, 132 (1992). Cf. McGee v. Board of Appeal of Boston, 62 Mass. App. Ct. 930, 931 (2004) (finding standing where proposed building would be taller than plaintiff's building, and within one foot of their windows, markedly decreasing their "light, air, view and privacy").
Next, CRT suggests that social gatherings at the top of the tower will increase noise. Not only is this speculation, but CRT's own expert opined that the sound coming from such a gathering is the same, or even less than the sound that would come from social events inside the property. Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass. App. Ct. 208, 212 (2003) (evidence of standing "must be more than unsubstantiated claims or speculative personal opinions"). Moreover, loud parties are already regulated by State and local law.[11] This is not an interest that the zoning bylaw protects.
Lastly, CRT claims that it may be injured by increased light from the tower. In addition to this naked allegation, notably, the tower renovations did not alter the exterior lighting. Indeed, CRT's own land survey expert failed to support the claimed injury as he plotted only from where on the CRT property the tower may be seen, during daylight. As such, this mere allegation of increased light was insufficient to render CRT a "party aggrieved" for purposes of establishing standing. See Boothroyd v. Zoning Bd. of Appeals of Amherst, 449 Mass. 333, 342 (2007) ("[U]nsubstantiated claims or speculative personal opinions do not constitute a sufficient predicate on which to confer standing" [citation omitted] ).
CRT's failure to establish that it is a person aggrieved can best be summed up by the deposition testimony of the beneficial owner of its property. When asked "what is it specifically about the work on the tower that concerns you," the owner replied, "I'd say all of it." When pressed for specifics, he responded, "everything that was done." Finally, when asked, "[h]ow do [the renovations] harm you," he glibly stated, "by being there." Ultimately, CRT's claims all correlate to the height of the tower, something that has remained unaltered for over thirty years and long before CRT purchased the property. As is the case here, "[o]nce the presumption [was] rebutted, the burden rest[ed] with [CRT] to prove standing [i.e., aggrievement], which requires that [CRT] 'establish -- by direct facts and not by speculative personal opinion -- that [their] injury is special and different from the concerns of the rest of the community.' " Kenner, 459 Mass. at 118, citing Standerwick, 447 Mass. at 33. Viewing the record in the light most favorable to CRT, it has no reasonable expectation of proving that it is a person aggrieved for purposes of conferring standing.
Conclusion. CRT is unable to establish standing to pursue these actions. Accordingly, the judgments are reversed and the matter is remanded for entry of new judgments dismissing the complaints for lack of standing. See Kenner, 459 Mass. at 125 ; Planning Bd. of Marshfield, 427 Mass. at 703. In light of our conclusion, we need not address the merit of CRT's claims.
So ordered.
Reversed and remanded.

A motion to consolidate the two cases was denied by a judge of the Land Court. Two judgments issued accompanied by one decision. A notice of appeal was filed in each case, but only the present appeal was docketed in the Appeals Court. We treat the cases as if they were consolidated in the Land Court.

Section IV.A of the bylaw stated that a town property could be used for residential and certain accessory uses, but that no building could "exceed two and one-half stories in height[.]" It did, however, have an exception for "towers ... not used for human occupancy."

These transactions are not relevant to the issue presented.

None of these renovations were challenged.

In granting Besser's special permit request, the board stated that "the proposed construction of a single family residence connecting to the existing tower ... would not be substantially more detrimental to the neighborhood than the existing nonconforming tower. In addition ... the proposed addition is in harmony with the purpose and intent of the [z]oning [b]y-[l]aw and would not be detrimental or injurious to the neighborhood, municipal services, traffic flow, or natural resources."

Minor modifications were also made to the exterior portion of the tower, including the replacement of light bulbs and damaged fixtures, as well as resurfacing an exterior balcony. These modifications were not challenged.

In granting SPRT's modification request, the board wrote that "[t]he result of the new proposal should be ... less obtrusive or offensive to the neighbors than what was originally proposed." The decision also stated that "it is difficult to find any such concerns to be very compelling when the persons who supposedly have the concerns refuse to appear before the [b]oard and personally validate the concerns."

General Laws c. 272, § 53, bars disturbances of the peace, and the town's general bylaw, Article X, § 24 (2015), bars "rude" behavior, shouting, screaming, and "loud outcries[.]"