NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-367

CEA BRIMBAL LLC[1]

vs.

143 BRIMBAL AVENUE, LLC, & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Defendant 143 Brimbal Avenue, LLC, was formed to purchase a 1.25-acre parcel at 143 Brimbal Ave. in Beverly so that an affiliated entity could operate a rug store at that property (rug store property). The zoning board of appeals of Beverly (board) issued a special permit for the project, which involved

_____

[1] The case was originally brought by 133 Brimbal LLC. While the appeal was pending, 133 Brimbal LLC sold its property to CEA Brimbal LLC. We disagree with the defendants that this mooted the controversy, because nothing suggests that the standing argument that is at issue turns on the identity of the owner of the 133 Brimbal property. We therefore have denied the defendants' motion to dismiss the appeal as moot and allowed 133 Brimbal LLC's motion to substitute CEA Brimbal LLC as the appellant. For simplicity, we refer to 133 Brimbal LLC and CEA Brimbal LLC interchangeably as the plaintiff.

[2] Joel Margolis, Victoria Caldwell, David Battistelli, Pamela Gougian, James Levasseur, Kevin Andrews, Stefano Basso, and Margaret O'Brien, as they are the members of the zoning board of appeals of Beverly.

both a change in use and the expansion of the existing building there.  The plaintiff is the owner of the parcel that directly abuts the rug store property to the south.  In 2021, the plaintiff brought a Land Court action to appeal the issuance of the special permit.  Following trial, the judge ruled that the plaintiff lacked standing to maintain the action.  On the plaintiff's appeal, we affirm.

The standing argument on which the plaintiff sought to rely focused on the adequacy of the on-site parking that would be available at the rug store property.  It is undisputed that there is no available off-site public parking in the area that could accommodate the rug store (either on public streets or at off-site parking lots open to the public).  As a result, the plaintiff argues, if the on-site parking available at the rug store property is inadequate, those patronizing that business who cannot find parking there will park illegally on the plaintiff's adjacent property, which would constitute a trespass and deprive the plaintiff (and its tenants, their customers, and others) of being able to park on its land.  Thus, the plaintiff's standing hinges on whether such a spillover effect will occur.  Passing over potential reasons to doubt whether those who could not find parking at the rug store property would actually park illegally at the plaintiff's property down the

2

street,[3] we turn to the central premise of the plaintiff's argument:  that the parking provided at the rug store property would be inadequate.

It was uncontested that there currently are eighty-three marked parking spaces at the rug store property.  As part of the development plans that the board approved, the rug store will reconfigure parking so as to provide seventy-four marked spaces.  The reconfiguration of the parking will serve to move parking spaces away from the boundary between the two properties.  The key factual question in dispute is whether the seventy-four parking spaces available at the rug store property will be sufficient for the store's parking needs.

The business proposed for the rug store property is a hybrid one that would include retail, storage, fabrication, and office space components.  Based on the extensive evidence that the defendant provided, including expert testimony, the judge found that the peak daily parking demand for the combined uses would be only twenty-nine spaces, that is, far less than the seventy-four spaces that in fact will be provided.  The

---

[3] Because of the plaintiff's installation of a so-called "Jersey barrier," there is no direct access between the parking areas on the two properties.  To access the parking area of 133 Brimbal Ave., a driver would have to leave 143 Brimbal Ave., drive down the street some eighty feet and then turn into the separate parking area there.  Then, after parking, the person would have to either crawl over the Jersey barrier or retrace their path and walk down Brimbal Avenue.

3

plaintiff provided no contrary evidence other than its principal's lay opinion, which the judge found "entirely speculative." The judge ultimately found that the "Plaintiff hasn't offered sufficient proof that [the rug store's] proposed operations at 143 Brimbal will result in any impact on parking at 133 Brimbal, let alone a harmful impact."

"Standing essentially becomes a question of fact for the judge." Kenner v. Zoning Bd. Of Appeals of Chatham, 459 Mass. 115, 119 (2011). Where, as here, a judge -- after trial -- has found standing absent on the ground that the proposed development will not have more than a de minimis impact on the plaintiff, appellate courts must affirm absent a demonstration that the findings are clearly erroneous. Id. at 124. On this record, the plaintiff has not shown any clear error in the judge's careful findings. The plaintiff's arguments that it is plain that the rug store grossly underestimated its parking needs are simply unpersuasive.[4]

---

[4] The plaintiff seeks to paint the rug store as having manipulated its evaluation of parking demand as part of a self-serving effort to deny plaintiff standing. We note that in light of the fact that there is no available public parking in the area and of the fact that the plaintiff has it in its power to prevent unauthorized parking on its land, the rug store has an obvious incentive to see that it can provide adequate on-site parking.

Unable to succeed in challenging the judge's factual findings, the plaintiff seeks to maintain that the judge committed legal errors.  It argues that, as a matter of law, the judge should not have counted twenty-five spaces as being available because those spaces violated applicable setback requirements (that is, the spaces were too close to the property boundaries).  Putting aside that this still would leave the rug store with forty-nine spaces, almost twice its projected peak daily demand, the plaintiff's argument conflates the standing issue -- whether there will be an adequate number of parking spaces in fact -- with the merits, whether the development and special permit comply with the zoning ordinance.[5]

The plaintiff also argues, especially in its reply brief, that the judge applied too strict a test for standing. According to it, a plaintiff need show only a "plausible" claim that it could be harmed, rather than specific proof that it more probably than not will be harmed.  In support of this argument,

_____

[5] The plaintiff makes no argument that it will be harmed by having the rug store parking placed too close to the property boundary.  This is not surprising given that the rug store's reconfiguration moved parking away from that boundary and given that it appears that the plaintiff allows parking on its own property right next to that boundary We additionally note that the defendants argue that the board had authority, under the special permit provisions, to allow parking that does not conform to setback requirements, that is, without the need for a variance.  We need not resolve that issue.

5

the plaintiff cites to cases such as Butler v. City of Waltham, 63 Mass. App. Ct. 435, 441-442 (2005), in which this court stated that to establish standing -- which we characterized as "the gateway through which one must pass en route to an inquiry on the merits" -- a plaintiff is "not required to persuade the judge that his or her claims of particularized injury are, more likely than not, true."  See Marashlian v. Zoning Bd. Of Appeals of Newburyport, 421 Mass. 719, 721 (1996) (cautioning that review of whether plaintiff has standing "does not require that the factfinder ultimately find a plaintiff's allegations meritorious").  Whatever the force of that argument might be in other settings, it gains little traction here where the plaintiff presented such a slim case as to how the issuance of the special permit would cause it harm.[6]

---

[6] There may be something of an unresolved tension in the case law between cases that treat standing as a "gateway" issue where merely "plausible" allegations of particularized harm are sufficient, see Butler, 63 Mass. App. Ct. at 441, and cases that require a plaintiff to make a more rigorous demonstration of how it likely will be harmed (thereby encouraging judges, as here, to hold full-blown trials on standing), see Kenner, 459 Mass. at 119.  We need not address that issue further, however, because the plaintiff's claim to standing fails under either view.

Discerning no error in the judge's finding that the plaintiff lacked standing, we affirm the judgment.[7]

So ordered.

By the Court (Milkey, Massing & Neyman, JJ.[8]),

*[signature]*

Assistant Clerk

Entered:   March 29, 2024.

---

[7] Defendant 143 Brimbal Avenue, LLC has requested that we award it reasonable appellate attorney's fees and double costs pursuant to Mass. R. App. P. 25, as appearing in 481 Mass. 1654 2019.  Although we agree that the plaintiff's appellate arguments are weak, we do not find them frivolous.  The request for sanctions is denied.

[8] The panelists are listed in order of seniority.