FRED MARINELLI vs. BOARD OF APPEALS OF STOUGHTON.

Suffolk. September 4, 2003. - October 24, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Standing. *Zoning,* Person aggrieved, Lot size, Frontage. *Statute,* Construction.

In an action brought under G. L. c. 40A, § 17, for judicial review of the denial of a building permit application upheld by the defendant town zoning board of appeals (board), the plaintiff, whose purchase and sale agreement with a real estate trust concerning the subject lot was signed by only one trustee, had standing to appeal from the board's determination, where the board failed to offer any evidence that the written consent of the trustees and beneficiaries to the agreement was lacking. [257-258]

A Land Court judge correctly ruled that a lot recorded as held in common ownership with five other lots at the time of a 1996 amendment to a town's zoning bylaws, and which was among the first of three lots for which a building permit was sought, came within the common ownership grandfather protection of G. L. c. 40A, § 6, where the plain language of that proviso did not exclude owners of four or more lots from protection, thereby generating irregular and inequitable results, but rather limited the number of lots for which any owner can obtain such protection [258-260]; where the lot in question did not lose its grandfather protection when it was sold after the effective date of the zoning change to a trust and out of common ownership, given that the language of G. L. c. 40A, § 6, established record ownership at the effective date of the zoning change, rather than at the time of the building permit application, and that such a restriction would do nothing to further the primary purposes of zoning laws [260-261]; and where the town's zoning board of appeals raised no common-law principle which conflicted with the language of G. L. c. 40A, § 6 [261-262].

A building permit request for a certain lot did not fail to qualify for grandfather protection pursuant to G. L. c. 40A, § 6, due to a lack of adequate frontage, where, despite the absence of a definition for the term "frontage" in that statute, the applicable town bylaw defined "street" in such a way as to encompass the road abutting the lot in question and, in turn, to satisfy the statutory frontage requirement relative to that lot. [262]

CIVIL ACTION commenced in the Land Court Department on April 8, 1999.

The case was heard by *Karyn F. Scheier,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Barbara J. Saint André* for the defendant.

*Thomas O. Moriarty* for the plaintiff.

CORDY, J. In this case we are required to interpret the common ownership grandfathering provision of the State's zoning act, G. L. c. 40A.

1. *Procedural history.* Fred Marinelli applied for a building permit to construct a single-family residence on a parcel of land (Lot C) in Stoughton. The town's building inspector denied Marinelli's application on the ground that Lot C lacked the minimum lot size required by the town's zoning bylaw, and the board of appeals of Stoughton (board) upheld the denial. On appeal, a judge of the Land Court granted summary judgment in favor of Marinelli, finding that Lot C was a buildable lot under both the common ownership grandfathering provision of G. L. c. 40A, § 6, and the town's zoning bylaw. The board appealed, contending that Marinelli lacked standing to appeal from the board's denial; the grandfather protection of § 6 did not apply to Lot C, either because it did not qualify for common ownership protection at the time the zoning bylaw was amended, or because it was transferred out of common ownership before the building permit was sought; and, even if Lot C otherwise qualified for grandfather protection, it has less than the minimum seventy-five feet of frontage also required by § 6, and consequently fails to meet all of its requirements. We transferred the case to this court on our own motion. We agree with the Land Court that Lot C is grandfathered under the common ownership protection provided by § 6, and affirm the judgment.

2. *Background.* The facts in this case are not in dispute. Lot C is a parcel of 25,095 square feet situated along Woodpecker Road in Stoughton, located in an R-15 zoning district. The lot appears on a plan endorsed by the planning board of Stoughton on November 14, 1991, and labeled "approval under the subdivision control law not required." At the time the plan was endorsed, Livio P. Marinelli owned Lot C as well as five other

adjoining lots.[1] Under the Stoughton zoning bylaw in effect in 1991, the minimum lot size required to construct a single-family residence in an R-15 zoning district was 25,000 square feet. However, on November 12, 1996, the bylaw was amended by a town meeting vote, increasing the minimum required lot size to 40,000 square feet.

On February 17, 1996, nine months prior to the amendment, Livio Marinelli transferred Lot C to the December Realty Trust (trust), but the trust did not become the record owner of Lot C until its deed was recorded on November 18, 1996, six days after the bylaw amendment. On March 26, 1996, Marinelli entered into a purchase and sale agreement with the trust, agreeing to purchase Lot C, contingent on his ability to obtain a building permit to construct a single-family residence on the lot. The purchase and sale agreement was signed by Richard F. Raymond, as trustee for the trust. Marinelli applied for a building permit on August 25, 1998, which was denied, leading to the present litigation.

3. *Discussion.* a. *Standing.* The board argues that Marinelli lacks standing to bring this appeal under G. L. c. 40A, § 17, because Marinelli is not a "person aggrieved" by a decision of the board.[2] This argument is premised on the board's claim that the purchase and sale agreement between Marinelli and the trust is invalid, because it was signed by only one trustee — Richard F. Raymond — allegedly in violation of the terms of the trust.[3]

Persons who qualify as "parties in interest" under G. L. c. 40A, § 11, are entitled to a presumption of standing under G. L. c. 40A, § 17. *Watros* v. *Greater Lynn Mental Health & Retardation Ass'n,* 421 Mass. 106, 110-111 (1995). Section 11 states: " 'Parties in interest' as used in this chapter shall mean the petitioner [and others] . . . ." G. L. c. 40A, § 11. Marinelli, as the petitioner, is therefore entitled to a presumption of standing to appeal from the board's decision.

---

[1] Two of the lots were subsequently sold and are not involved in this appeal.

[2] General Laws c. 40A, § 17, provides: "Any person aggrieved by a decision of the board of appeals . . . may appeal to the land court department . . . ."

[3] The trust terms state: "No assignment or transfer of any beneficial interest may be made without the written consent of the Trustees and of all the beneficiaries hereunder."

To rebut a presumption of a plaintiff's standing as an aggrieved person, a defendant must offer evidence warranting a finding contrary to the presumed fact. *Id.* at 111. The board's speculation that Raymond did not have the authority to act on behalf of the trust is insufficient to rebut this presumption. Although the board correctly notes that the trust terms forbid transfer of any beneficial interest without the written consent of the trustees and beneficiaries, the board has failed to offer any evidence that such written consent was missing in this instance. Instead, the board argues that Marinelli has an affirmative obligation to produce evidence demonstrating the validity of the transfer. We decline the board's invitation to shift the burden of proof to Marinelli. Marinelli has standing to appeal from the board's determination.

b. *Grandfather protection under G. L. c. 40A, § 6.* We address first whether Lot C comes within the common ownership provision of G. L. c. 40A, § 6. Section 6 contains a grandfathering provision that exempts qualifying lots held in common ownership with adjacent lots from certain kinds of zoning changes for five years from their effective date. In relevant part it provides that:

> "Any increase in area, frontage, width, yard or depth requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date . . . to a lot for single and two family residential use, provided [that] . . . such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of [January 1, 1976] . . . provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership."

For purposes of § 6, lots are "held in common ownership" if they are listed as owned by the same party on the most recent instrument of record prior to the effective date of the zoning change. *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763 (1985). Lot C is depicted as held in common ownership with five other lots on the 1991 land plan, and the plan was the most recent instrument of record at the time of the effective date of the zoning change, November 12, 1996. Hence, for purposes of § 6, Lot C was "held in common ownership" with five adjoining lots.

The parties dispute the meaning of § 6's final proviso that the grandfathering provision "shall not apply to more than three of such adjoining lots." The board contends that when a party holds more than three lots in common ownership, the grandfather protection of § 6 does not apply to any of those lots. Under this interpretation, if a party owns two or three adjacent lots, all of the lots are protected, but if a party owns four or more adjacent lots, none of the lots is protected. The Land Court judge rejected the board's argument and interpreted the proviso to mean that if a party owns four or more adjacent lots, the grandfather protection applies to the first three lots for which protection is sought.

We agree with the Land Court's interpretation. "[T]he primary source of insight into the intent of the Legislature is the language of the statute." *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 60 (2002), quoting *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983). The language of the proviso expresses its limitation in terms of the number of lots to which the protection extends: "the provisions of this sentence *shall not apply to* more than three of such adjoining lots" (emphasis added). G. L. c. 40A, § 6. It does not express its limitation in terms of the total number of lots owned. Thus, by its plain language, the proviso does not exclude owners of four or more lots from the protection of § 6 outright. It merely limits the number of lots for which any owner can obtain such protection.

In defense of its interpretation, the board argues that parties who own a large number of adjacent undeveloped lots have a greater ability to reconfigure those lots to bring them into conformity with increased lot size requirements. Thus, the board contends, the proviso should be read to exclude entirely property owners with more than three lots from grandfather protection. The board's interpretation, however, would generate irregular and inequitable results, of which this case is a prime example. At the time of the 1991 land plan, Livio Marinelli owned four contiguous buildable lots[4] — A, B, C, and D — with areas of 25,089, 25,095, 25,095, and 25,095 square feet each, for a total of 100,374 square feet of contiguous land. Under Stoughton's prior zoning regulation, he could divide this land, as he did,

---

[4]Livio Marinelli's other two contiguous lots were not buildable even under the old zoning bylaw.

into four buildable lots meeting the 25,000 square foot minimum area requirement. However, under the new 40,000 square foot minimum area requirement, his 100,374 square feet could only be reconfigured to create two buildable lots. Under the board's interpretation, Livio Marinelli is not protected by § 6 and therefore is entitled to build on only two lots. However, if, at the time of the 1991 plan, Livio Marinelli had owned only *three* contiguous lots — for example, lots A, B, and C, for a total of 75,279 square feet — he would be protected by § 6 and be entitled to build on all three lots. Consequently, a landowner would end up with *more* buildable lots after a zoning change by buying *fewer* lots beforehand. If the Legislature intended such a result, it would have said so with greater clarity.[5]

We next address the board's contention that Lot C lost its grandfather protection when it was sold to the trust and out of common ownership. This argument is without merit. The language of § 6 describes the common ownership requirement in the past tense: "provided [that] . . . such lot *was held* in common ownership," which is to be determined by looking to record ownership at the time of the effective date of the zoning change (emphasis added). See *Adamowicz* v. *Ipswich, supra* at 763. The board asks this court to read into the statute an additional requirement of common ownership at the time of the building permit application. We decline to do so. See *General Elec. Co.* v. *Department of Envt'l Protection,* 429 Mass. 798, 803 (1999), quoting *King* v. *Viscoloid Co.,* 219 Mass. 420, 425 (1914) ("we do not 'read into the statute a provision which the Legislature did not see fit to put there' ").

Moreover, as the Land Court judge correctly pointed out, interpreting § 6 to require that lots remain in common ownership to retain grandfather protection would prevent owners from conveying buildable lots, forcing owners instead either to develop the lots themselves or to sacrifice grandfather protection. Such a restriction would do nothing to further the primary purposes of zoning laws, preventing particular *uses* of

---

[5]For example, instead of requiring that a qualifying lot be "held in common ownership with any adjoining land," the Legislature could have required that the lot be "held in common ownership with no more than two other contiguous lots." The Legislature did not do so.

land, not uses of land by particular *individuals.* See, e.g., *Kaplan* v. *Boston,* 330 Mass. 381, 384 (1953) ("primary purpose of zoning is the preservation in the public interest of certain neighborhoods against uses which are believed to be deleterious to such neighborhoods").

The board's reliance on the Appeals Court's decision in *Preston* v. *Board of Appeals of Hull,* 51 Mass. App. Ct. 236 (2001), is misplaced. The *Preston* case addressed the mirror image of the circumstances in this case: there, the lots at issue were held in separate ownership at the time of the zoning change (and therefore grandfathered under a different provision of § 6) but in common ownership at the time of the building permit application. *Id.* at 237, 239. The *Preston* court was confronted with an apparent conflict between the language of § 6, which grandfathered separately held lots at the time of the zoning change, and the common-law doctrine of merger, which treats adjacent lots currently in common ownership as a single lot "for zoning purposes so as to minimize nonconformities." *Id.* at 238, quoting *Seltzer* v. *Board of Appeals of Orleans,* 24 Mass. App. Ct. 521, 522 (1987). After examining the legislative history of G. L. c. 40A in detail, the court concluded that the Legislature did not intend to reject the long-standing merger doctrine that it described as a "powerful tool in achieving the very goal of the Zoning Act." *Preston* v. *Board of Appeals of Hull, supra* at 243. The court therefore applied the merger doctrine to hold that adjacent lots held separately at the time the zoning change made them nonconforming, but subsequently acquired and held in common ownership, are not grandfathered as separate lots under § 6. *Id.*

The logic of *Preston* is inapplicable in this case. There is no comparable common-law principle with which the language of § 6 is in conflict. Lots held in common ownership at the effective date of a zoning change are grandfathered under the common ownership provision of § 6, and remain grandfathered for five years whether or not they remain in common ownership at the time of a subsequent building permit application.

Because Lot C was recorded as held in common ownership with five other lots at the time of the 1996 amendment to the town's zoning bylaw, and is among the first three to seek a

building permit, the judge correctly ruled that it came within the common ownership grandfather protection of § 6.

c. *Frontage.* To qualify for grandfather protection under § 6, a lot must also have "at least . . . seventy-five feet of frontage." Because G. L. c. 40A does not define "frontage," we look to the applicable town bylaw for a definition. The Stoughton zoning bylaw defines "[l]ot [f]rontage" as "[t]he horizontal distance measured along the front lot line . . . ." In turn, the bylaw defines "[l]ot [l]ine, [f]ront" as "[t]he property line dividing a lot from a street (right-of-way)." The board contends that Woodpecker Road — the way abutting Lot C — does not meet the bylaw's definition of "[s]treet," and that Lot C therefore does not meet the seventy-five foot frontage requirement for grandfather protection under G. L. c. 40A, § 6.

We disagree. The bylaw defines "[s]treet" to include "a way shown on a plan approved and endorsed in accordance with the 'Subdivision Rules, Regulations, and Requirements, in Stoughton, Massachusetts." Woodpecker Road is shown on the 1991 land plan, which was endorsed "approval under the subdivision control law not required" by the town's planning board. It thus meets the bylaw's definition of "[s]treet,"[6] and Lot C meets the seventy-five foot frontage requirement of § 6.

4. *Conclusion.* Lot C meets all the requirements for grandfather protection under G. L. 40A, § 6, and is, therefore, buildable.[7] The judgment and order of the Land Court judge is affirmed.

*So ordered.*

---

[6]The board's contention that Woodpecker Road must conform to the requirements for subdivision plans in G. L. c. 41, § 81L, misreads the words of the bylaw. Under the bylaw, the *plan* on which the way appears must have been endorsed and approved in accordance with the subdivision rules; it is not necessary for this court to review whether the *way* itself conformed to the substance of those rules. In other words, having convinced the planning board that Woodpecker Road met the requirements applicable to ways for purposes of a subdivision plan, there was no requirement that the building permit applicant establish the correctness of the planning board's decision or otherwise reestablish that the way was proper. See *LeBlanc* v. *Board of Appeals of Danvers,* 32 Mass. App. Ct. 760 (1992).

[7]Because we conclude that Lot C enjoys grandfather protection under G. L. c. 40A, § 6, it is unnecessary for us to consider whether Lot C would also enjoy grandfather protection under Section IX of the Stoughton bylaw.