Wilkins, Douglas H., J.
The Plaintiff, Anne M. Brundige, brought this appeal under G.L.c. 40A, §17, from a decision of the Leicester Zoning Board of Appeals (“Board”) upholding the Leicester Building Inspector’s decision not to take enforcement action against the intervenors, John D. Bourassa and Barbara A. Bourassa. All parties have moved for summary judgment. After hearing and upon consideration of the parties’ written submissions, the plaintiffs motion for summary judgment is ALLOWED and the motions of the Board and the Bourassas are DENIED.
BACKGROUND
The parties agree that the material facts are undisputed. The Rule 9A(b)(5) submissions show the following.
The plaintiff is a resident of Leicester, Massachusetts, and owns the real property located at 8 Maple Lane, Leicester Massachusetts (“Lots 41 and 42”) by deed recorded in the Worcester District Registry of Deeds, Book 43547, Page 22.[2] The Plaintiffs property consists of two contiguous lots shown as lots 41 and 42 on a plan of land recorded in Plan Book 113, Plan 71. The plaintiff acquired Lots 41 and 42 on November 26, 2008, as a result of a foreclosure by the Federal Home Loan Corporation against the prior owners, Robert A. Witt and Catherine M. Bourassa.
Witt and Bourassa acquired title to Lots 40, 41 and 42 on December 9, 2003 by deeds recorded in Book 32418, page 87 and Book 32418, Page 89. They granted a mortgage only on lots 41 and 42. When they acquired title, the three lots were all zoned Suburban-Agriculture (“SA”). The Leicester Zoning By-law (“Bylaw”) requires a minimum 80,000 square foot lot size and 200 feet of frontage in the SA zone.
*189 Lots 40, 41 and 42 had a combined area of 17,670 square feet and frontage of 150.31 feet. Considered together, they are pre-existing non-conforming lots for zoning purposes.
In February 2004, Witt applied for a building permit to construct an accessory building at 8 Maple Street for the purposes of storage. The application described the building’s location as 108 feet to the right of the lot line, 10 feet to the left of the adjoining lot and 10 feet to the rear of the adjoining lot. The Town issued the building permit (#04-013) on February 26, 2004 for the location described as Assessors Map 28B, Parcel D15. Due to the death of Robert A. Witt on May 18, 2006, construction of the accessoiy building was not timely completed.
In 2008, GMAC Mortgage, LLC, then holder of the Witt and Bourassa mortgage, foreclosed on its mortgage on Lots 41 and 42, by foreclosure deed recorded in Book 42632, Page 161. When Catherine Bourassa learned that she retained title to Lot 40, she conveyed her interest in that lot to John D. Bourassa and Barbara A. Bourassa by deed recorded in Book 43271, Page 286.
There is now a two-stoiy garage building on lot 40, located within 6.2 feet of the common boundary with lot 41, with a stairway located within 3.6 of that common side line.
The severance of lot 40 from lots 41 and 42 left the latter two lots, collectively, with 100.21 feet of frontage and 11,942 square feet of area. Lot 40 has 50.10 feet of frontage and 5,728 square feet of area. Both the garage on lot 40 and house on lots 41 and 42 do not comply with required set backs and sideline requirements under the Bylaw.
On February 26, 2010, the plaintiff wrote to the Leicester Building Inspector, Jeffrey Taylor, to request enforcement of the Bylaw on the grounds that the two-story garage building on lot 40 can no longer be considered an accessory building and does not qualify as a legal free standing building. On that last point, the letter was quite clear that “Lot 40 cannot qualify as an accessoiy building, as it is located on land held separate and distinct from the parent lot at 8 Maple Street.”
By letter dated March 15, 2010, the Building inspector wrote to Town Counsel that lot 40 is considered non-conforming but not pre-existing non-conforming. However, by letter dated April 7, 2010, he denied the plaintiffs request for enforcement on the ground that the plaintiff lacked standing as an aggrieved person.
The Building Department then re-issued building permit #04-013 on May 24, 2010. The plaintiff states that the building permit, as re-issued was for her properly, not lot 40. On May 6, 2010, the plaintiff filed with the Board a petition to order enforcement action by the Leicester Building Inspector. The Board heard the petition on June 21, 2010 and denied the petition on the ground “that the petitioner, owning a pre-exist-ing nonconforming lot, has no grounds to complain about another pre-existing non-conforming lot.” The Board filed its decision with the Leicester Town Clerk’s office on June 23, 2010. This Appeal was timely filed on July 12, 2010.
The following provisions of the Bylaw are pertinent:
1.4.02ALTERATION AND EXTENSION OF NONCONFORMING STRUCTURES OR USES 1.4.02.1General
Except where alteration, reconstruction, or extension of a single-family or two-family residential structure would not increase the nonconforming nature of said structure , a nonconforming structure or use shall be altered, extended, or reconstructed only upon issuance of a special permit by the Zoning Board of Appeals. No such alteration, reconstruction, or extension shall be permitted unless the Zoning Board of Appeals finds after a public hearing that such alteration, reconstruction, or extension would not be substantially more detrimental to the neighborhood than the existing nonconformity.
1.5 ACCESSORY BUILDINGS
1.5.01No accessoiy building or structure shall be located in the space extending for the full width of the lot between the front line of the nearest building wall and the front lot line unless otherwise provided for under Sec. 6.4.02 of this by-law. No accessoiy building shall be located in any side yard area nearer to the side lot line than ten (10) feet, or in a rear yard area nearer the rear lot line than ten (10) feet, or nearer to another principal or accessory building than ten (10) feet.
SECTION 3 USE REGULATIONS
3.1BASIC REQUIREMENTS
Except as provided in Section 1.4 of this by-law, no building or structure shall be constructed, and no building, structure or land or part thereof shall be used for any purpose or in any manner other than for one or more of the uses hereinafter set forth as permitted in the district in which such a building, structure or land is located, or set forth as permissible by Special Permit in said district and so authorized . . .
3.2SCHEDULE OF USE
3.2.02RESIDENTIAL
4. Accessoiy uses customarily incidental to a permitted main use on the same premises . . .
5. Accessoiy buildings, customarily incidental to the uses permitted on the same premises.
*190 SECTION 4 DIMENSIONAL REQUIREMENTS 4.1 BASIC REQUIREMENTS
No building or structure erected in any district shall be located on a lot having less than the minimum requirements set forth in Table I and II, and no more than one dwelling shall be build upon such lot. . . No existing lot shall be changed as to size or shape so as to result in the violation of the requirements set forth in Table I and II.
*** [Section 4.2, including Tables I and II omitted]
4.3 MODIFICATIONS TO DIMENSIONAL REQUIREMENT
4.3.01 No existing lot shall be changed as to size or shape so as to result in the violation of the requirements set forth in Section 4.2.
DISCUSSION
To request enforcement by the building inspector, appeal a denial to the Board, and file an action in this Court, the plaintiff must be a “person aggrieved.” Jaffe v. Zoning Board of Appeals of Newton, 34 Mass.App.Ct. 929, 930 (1993) (rescript) (plaintiff need not live in the same zoning district as the defendant to have standing); Chongris v. Board of Appeals of Andover, 17 Mass.App.Ct. 999, 1000 (1984). The phrase “person aggrieved” has the same meaning in G.L.c. 40A, §8 as in G.L.c. 40A, §17. Green v. Board of Appeals of Provincetown, 404 Mass. 571, 573-74 (1989). Therefore, the Court considers the abundant authority addressing standing under both sections of G.L.c. 40A.
As an abutter, the plaintiff enjoys a presumption of standing. See Standerwick v. Zoning Board of Appeals of Andover, 447 Mass. 20, 32-34 (2006) (construing G.L.c. 40A, §17 as incorporated in G.L.c. 40B, §21). “(T]o rebut the presumption, the defendant must offer evidence ‘warranting a finding contrary to the presumed fact.’ ” Id., at 34, citing cases and quoting Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 258 (2003). See also Kenner v. Chatham Zoning Board of Appeals, 459 Mass. 115, 118 (2011) (“If standing is challenged, and evidence is submitted in support of that challenge," the presumption recedes (emphasis added)). “A presumption does not shift the burden of proof; it is a rule of evidence that aids the party bearing the burden of proof in sustaning that burden by ‘throw[ing] upon his adversary the burden of going forward with evidence.’ [Citation omitted.] .. . Thus, an abutter is presumed to have standing until the defendant comes forward with evidence to contradict that presumption.” Standerwick, 447 Mass. at 34. In the summary judgment context, the defendants need not present affirmative evidence if they can show that the plaintiff “has no reasonable expectation of proving” a legally cognizable injury. Id. at 35, quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). However, argument alone — or even findings by the Board — is not enough to contradict the presumption. See Marinelli 440 Mass. at 258, citing Watros v. Greater Lynn Mental Health & Retardation Ass’n, Inc., 421 Mass. 106, 111 (1995).
In this case, the defendants have presented no affidavits, but do cite the non-conformity of the plaintiffs own lot. They also cite cases holding that commercial or institutional landowners lack standing to challenge the non-residential uses of other landowners, because a business has no interest in maintaining a neighborhood’s residential quality. Circle Lounge and Grill v. Board of Appeal of Boston, 324 Mass. 427, 431 (1949); Sherrill House, Inc. v. Board of Appeal of Boston, 19 Mass.App.Ct. 274, 276 (1985) (“As Sherrill House was an institutional user operating under a prior nonconforming use, however, we do not view it as a proper party because it has no legitimate interest in preserving the integrity of the district as a residential one”).
From these cases, the defendants deduce a general principle that a landowner with a nonconforming use or structure has no legitimate interest in enforcement of the bylaw against other landowners who violate the same bylaws. The true principle is narrower and does not affect this case. In Vainas v. Board of Appeals of Lynn, 337 Mass. 591 (1957), the plaintiff owned property that evidently had dimensional and use non-con-formities, but was still a person aggrieved “[a]nd this is none the less so because the plaintiffs property is likewise nonconforming.” See also Reynolds v. Board of Appeal of Springfield, 335 Mass. 464, 470 (1958) (plaintiffs were “persons aggrieved” “notwithstanding a nonconforming use in their residence”); Tsagronis v. Board of Appeals of Wareham, 33 Mass.App.Ct. 55, 59 (1992) (“it does not matter that the plaintiffs’ own use is similarly nonconforming,” citing Reynolds and Vainas), rev’d on other grounds, 415 Mass. 329 (1992). Notably, the Supreme Judicial Court in Tsagronis, 415 Mass. at 330-31, affirmed the Appeals Court’s holding that the plaintiffs had standing. Whatever the coutours of the rule in Sherrill House and Circle Lounge, they do not preclude an owner of a non-conforming residential property from being a person aggrieved as a matter of law simply because of existing dimensional and lot size nonconformities.
Nonconformity of a portion of plaintiffs use or of plaintiffs buildings with the applicable, zoning requirements has been held irrelevant, at least where the plaintiff is seeking to preserve the integrity of a residential zoning district within which its property is located and the plaintiffs property is devoted in some measure to a conforming residential use.
Robert Fishman, “Judicial Review of Variances and Special Permits,” in Massachusetts Zoning Manual, §11.5, p. 11-44 (MCLE 2010).
It is also worth noting that Lot 40 violates at least one Bylaw provision that Lots 41 and 42 do not. The building on Lot 40 is not a residence, but an outbuilding that was formerly an accessory use to a residence. The plaintiff pointed out below that the garage on Lot *191 20 no longer is on the same lot as the principal use. The Bylaw requires that both accessory uses and accessory buildings be “customarily incidental to a permitted main use on the same premises.” Bylaw 3.2.02.4 and 5. Lot 40’s outbuilding does not meet that requirement. The house on lot 41 and 42, by contrast, appears to be a permitted single-family residential use, albeit on an undersized lot and in nonconformity with dimensional requirements. In this regard, it may also be significant that the Bylaw provides: “the Board of Appeals shall not grant a variance relating to the use of land or structures.” Bylaw 6.4.03. See also G.L.c. 40A, §10 (Zoning Board of Appeals may not grant a use variance without express authorization in a zoning bylaw). The Bylaw itself recognizes that a non-conforming use is different in kind from a nonconforming lot or building. The plaintiff is therefore complaining in substantial part that Lot 40 has a violation that her property does not share.
The defendants also argue that the plaintiff has set forth no facts showing aggrievement. But, as noted above, the plaintiff has the benefit of the presumption of standing, which the defendants have not challenged by affidavit or other sworn or admissible evidence. The unrebutted presumption by itself establishes standing. That is enough, but there is more.
A bylaw’s area and frontage requirements relate to lessening congestion, as well as the convenience and general welfare of the Town’s inhabitants, which are purposes of the Bylaw. See Sheppard v. Zoning Board of Appeal of Boston, 74 Mass.App.Ct. 8, 11-13 (2009); Dwyer v. Gallo, 73 Mass. 292, 296 (2008) (overcrowding, congestion and avoiding undue concentration). Density is among an abutter’s legal interests. Dwyer at id., citing Standerwick and Tsagronis. In this case, the plaintiff complains not only of violation of the Bylaw in general, but specifically challenges non-compliance with the plot plan and intrusion of an accessory building into the bylaw’s 10-foot setback from her own lot line. There is no plausible purpose to be served by such Bylaw requirements except to protect an abutter’s interest against crowding by a neighbor. As the landowner closest to the violation, the plaintiff suffers the brunt of the intrusion caused by a setback violation where the buildings are in close quarters and has interests that are “special and different from the concerns of the rest of the community.” Sheppard, 74 Mass.App.Ct. at 11, quoting Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. 551, 554 (1999).
Moreover, as noted above, the Bylaw requires ac-cessoiy buildings to be on the same premises as the main use, which protects the neighborhood against absentee ownership of accessoiy buildings. In enacting this Bylaw, the Town could reasonably expect that a building on the landowner’s own property is likely to receive better upkeep, maintenance, appearance and general conformity with residential use than one with which the owner does not have to live. While others may be affected by a non-residential building owned by an absentee, the obvious intent of the “same premises” requirement of the Bylaw is to protect abutters, who are most directly affected.
The defendants finally argue that the plaintiff should be charged with responsibility for the severance of the two lots which created the nonconformity. The rule of self-created hardship exists to limit or foreclose variance relief to a landowner who has created the non-conformity by, for instance, conveying frontage or lot area needed to ensure conformity to zoning requirements. Adams v. Brolly, 46 Mass.App.Ct. 1, 4 (1998). Even in the variance context, a purchaser with knowledge of a non-conformity does not acquire a lesser right to a variance than the seller. Lamb v. Zoning Board of Appeals of Taunton, 76 Mass.App.Ct. 513, 516-17 (2010). By analogy, a purchaser with knowledge of a non-conformity does not, for that reason, lose standing. While it is true that she was deemed to know about the severance of the two lots when she bought the house at foreclosure, her right to seek enforcement action was equally evident. The defendants cite no cases construing “aggrieved party” in similar circumstances to support their position on this point.
The principles underlying the rule of self-created hardship actually work in favor of, and certainly not against, standing here. “A basic purpose of the zoning laws is ‘to foster the creation of conforming lots.’ ” Preston v. Board of Appeals of Hull, 51 Mass.App.Ct. 236, 238, 241-42 (2001) (citations omitted). See Wells v. Zoning Board of Appeals of Billerica, 68 Mass.App.Ct. 726, 736-36 (2007) (landowners must use their adjoining land, if any, to avoid or diminish nonconformity). Just as that purpose underlies the rule of self-created hardship, so it should inform the law of standing, which is rooted in the principle that plaintiffs should be able to demand enforcement when they fall within the scope of those specifically protected by the Bylaw. Whatever the reason for the prior owners’ mortgage on only two of three lots and their subsequent default, it would be perverse to adopt a rule of standing that immunizes the resulting non-conformities from challenge by the party most affected, namely the abutting landowner. That is particularly so where the Building Inspector rightly says that the non-conformities are not pre-existing lawful non-conformities.
In any event, the sequence of events here is not the plaintiffs fault, at least for purposes of resolving the threshold issue of standing. The severance of lot 40 from lots 41 and 42 resulted not from any act of the plaintiff, but from the decision of the prior owners and the bank to mortgage only lots 41 and 42, coupled with the prior owners’ subsequent default. There is no suggestion that the prior owners intentionally defaulted to gain an advantage under zoning.[3] The de *192 faulting owners were the predecessors in interest of both the plaintiff and the intervenors.
Whether the plaintiff proves her case on the merits is another matter, but she is not required to prove that she will succeed on the merits in order to have standing. Kenner, 459 Mass. at 118; Sheppard, 74 Mass.App.Ct. at 11. At the same time, I do not grant the plaintiffs request for an order on the merits mandating enforcement and demolition of the garage on Lot 40. The Board has not had a chance to address these matters; it ruled only on standing. There are many issues and considerations for the Board to weigh.[5] The Court should not usurp the Board’s authority to make these decisions in the first instance.
I have considered whether I should exercise my discretion to allow the defendants to supplement their legal arguments with late-filed affidavits[4] attempting to rebut the presumption of standing with facts. In light of the case law, however, I see little or no likelihood that new affidavits could make a difference. The plaintiff has indisputably produced evidence, for standing purposes, to show that she is living next to a structure that is closer to her property line than allowed by zoning or, indeed, the very building permit issued by the Town. The difference between 10 feet of setback or 3.6 feet of setback from the plaintiffs own lot cannot reasonably be deemed de minimis, particularly where the lots themselves are small. Compare Kenner, 459 Mass. at 123 (de minimis impact on view). She has also shown beyond dispute that she is living next to a use that is no longer accessory to a principal use on the same premises. The town has deemed such accessory uses incompatible with the SA zone, which is exactly the interest the plaintiff asserts. I cannot conceive of — and, indeed, the defendants do not suggest — what facts they might adduce to rebut these showings of injury. Weighing the slim likelihood of any change in the outcome against the further expense and delay that late-filed affidavits would cause the plaintiff, I do not allow post-argument factual supplementation.
Since the Board erred in holding that the plaintiff lacked standing, the matter must be remanded to the Board for further proceedings. G.L.c. 40A, §17.
ORDER
The Plaintiffs Motion for Summary Judgment is ALLOWED as to standing but otherwise denied without prejudice to renewal after the Board rules on remand. The Defendants’ and Intervenors’ Motions for Summary Judgment are DENIED. The Board’s decision is vacated and the matter is remanded to the Board for further action consistent with this Memorandum of Decision and Order.

For ease of reference, all citations to book and page numbers will be to those instruments recorded in the Worcester District Registry of Deeds.

If the prior owner had such an intent, the need for enforcement is arguably even stronger. It is unquestionably illegal for a landowner voluntarily to sever adjoining lots into nonconforming lots. See, e.g., Martin v. Yarmouth, 20 Mass.App.Ct. 972, 972-73 (1985). Yet, if the prior owner intended to accomplish this voluntarily by mortgaging two of three lots and then defaulting, the defendants’ argument on standing would condone such severance without consequence, unless the Building Inspector steps in sua sponte.

See Superior Court Rule 9A(b)(i), (ii), (vi) (affidavits shall accompany the motion or opposition; all affidavits shall be included in the joint appendix).

The fact that the plaintiffs have standing, of course, implies nothing about the merits and the Court expresses no opinion on any issue other than standing. Those issues are not easy. The law is not clear in Massachusetts, but it has been argued that a lot that becomes non-conforming because of an involuntary transfer (such as eminent domain) is a non-conforming lot, not entitled to protection as a pre-exist-ing non-conforming use, although the lot may qualify for variance relief, at least. See “Judicial Review of Variances,” supra, §6.2, pp. 6-4 to 6-5 (“. . . a New York court ruled in such an instance that a conforming structure became an illegal, noncomplying structure as the result of a taking”). The Board may have to decide that issue, as well as the issue whether a severance that results from a mortgage of 2 of 3 lots followed by a foreclosure should be treated as a voluntary or involuntary severance for zoning purposes — that is, whether it constitutes “zoning misbehavior” (see Wells, 68 Mass.App.Ct. at 736 (citation omitted)), even though the prior owner did not want the foreclosure and the vast number of mortgagors would never imagine the zoning problems presented by this case at the time they executed the mortgage. Finally, the Board may have to decide whether it has the power to do equity in the circumstances or whether its hands are tied by applicable law, including the prohibition on use variances. Cf. Town of Marblehead v. Deery, 356 Mass. 532 (1956).