NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-258

KAREN L. MACNUTT

vs.

ZONING BOARD OF APPEAL OF BOSTON & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On cross motions for summary judgment, a Superior Court judge determined that the plaintiff, Karen MacNutt, lacked standing to challenge a decision by the zoning board of appeal of Boston (board), to grant the defendant, Diana Avalony, a variance from the Boston zoning code enacted pursuant to St. 1956, c. 665 (code). The judge dismissed MacNutt's complaint for review of the board's decision without acting on her cross motion, and MacNutt appealed. We vacate and remand.

Background. We summarize the evidence in the light most favorable to MacNutt. See 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699 (2012). MacNutt and Avalony live one house and less than sixty feet away from each

---

[1] James Christopher and Diana Avalony.

other on Minot Street in Dorchester.  On each lot sits a two-story, two-family structure with two units each containing over one thousand square feet of living space.  Both lots also have off-street parking for three vehicles.  The lots were created in 1926 as part of a subdivision that established many similar lots on the north side of Minot Street, and like those of their neighbors, the lots of MacNutt and Avalony are just under five thousand square feet.

MacNutt lives alone in her home, where she was raised and has lived for over seventy years.  Avalony purchased her home in 2016 from sellers represented by MacNutt, an experienced attorney.  Avalony resides in one unit of her home with her husband, toddler, and infant and uses the lot's parking area for her family's three vehicles.  Avalony's other unit is rented to three adult tenants, at least one of whom has a car.  Each unit has three bedrooms, one bathroom, one living room, and one "eat-in" style kitchen.  As evidenced by (1) the "numerous offers" the sellers received before accepting Avalony's, (2) the fact that MacNutt receives at least one unsolicited offer every month to sell her home, and (3) the fact that the assessed value of MacNutt's home "has gone up $100,000" each year "for the last three years . . . base[d] . . . on comparable sales," two-family homes in the area are very desirable.

2

In 2002 (fourteen years before Avalony purchased her home), the code was amended to include Article 65, establishing a "Dorchester neighborhood district" that encompasses Minot Street.  St. 1956, c. 665, art. 65, § 65-1.  Pursuant to Article 65, the Dorchester neighborhood district is divided into "residential subdistricts," labeled (among others) one-family (1F), two-family (2F), three-family (3F) including "triple-decker housing" (3F-D), row house (RH), and multifamily (MFR).  MacNutt and Avalony live in a "2F-5000" subdistrict, meaning two-family homes on lots of at least five thousand square feet.  "In a 2F Subdistrict, the maximum number of Dwelling Units allowed in a single building shall be two (2)."  Article 65, § 65-7(2).  By contrast, "a variety of housing types " are allowed in 3F, 3F-D, RH, and MFR subdistricts, "including one-, two-, and three-family dwellings" of all kinds (triple decker, row house, town house).  Article 65, § 65-7(3),(4).

Sometime before May 2018, Avalony gave birth to a second child since purchasing her home; came to feel that her house was too small; and hired Roche-Christopher Architecture LLC (RCA) to design an addition.  To finance the addition Avalony would "need to construct and receive rental income from a third unit," so RCA principal manager James Christopher applied on Avalony's behalf for a permit to construct the addition and change the occupancy from two to three-family.  The application was denied

3

because the project would violate Article 65's parking, dimensional, and use provisions. See Article 65, § 65-8,9,41. Avalony appealed to the board and requested variances from Article 65 pursuant to § 7 of the code, claiming hardship "[d]ue to the lot size and the size of the existing structure."

After a public hearing and a view of the property, the board found that the conditions of § 7 were met; approved of the addition of an attic unit to Avalony's home containing three bedrooms, one bathroom, one living room and one kitchen; and granted variances from the code. In Superior Court, MacNutt challenged the sufficiency of the board's findings and its conclusion that Avalony qualified for variances, claiming standing based on density and overcrowding concerns such as parking and traffic, increased danger of fire spreading, reduced open space for water absorption, reduced air and light to MacNutt's yard, and increased taxes. She also claimed destruction of the neighborhood's character, either "by causing two[-]family homes to increase in value because speculators look at them as potential three[-]family homes" or because other homeowners would convert their two-family homes into more profitable three-family ones.

Joined by the board, Avalony moved for summary judgment on the issue of standing, arguing that MacNutt's allegations of harm were not supported by credible evidence, were not interests

4

protected by the code, were not particularized to MacNutt, or were de minimis. MacNutt opposed the motion and cross-moved for summary judgment on her complaint. The parties filed a joint appendix containing forty-four exhibits; among other documents, MacNutt offered building plans, code provisions, zoning and assessor's maps, photographs of parking congestion, assessment records, copies of parking complaints to the city, discovery responses, the affidavit of a neighbor expressing the same concerns as MacNutt, and deposition testimonies of MacNutt and a retired fire inspector. Avalony also offered building plans, discovery responses, and affidavits of herself; of her husband; of Christopher, attached to which was a "sun study" prepared by an RCA employee; and of professional traffic engineer Gary McNaughton.

MacNutt moved to strike the sun study and affidavit of McNaughton, but it does not appear that the judge ruled on those motions. Nor did she address MacNutt's density and overcrowding arguments except to say that MacNutt's concerns "are not frivolous." Reasoning that "a defendant is not required to present affirmative evidence that refutes a plaintiff's basis for standing" at the summary judgment stage; "instead, a defendant's reliance on the plaintiff's lack of evidence has equal force," the judge determined that MacNutt's concerns were "not sufficient to confer standing," even though "[t]he Boston

ZBA's decision has allowed a change to the character of this established two-family neighborhood perhaps opening the possibility of more dense uses on the lots."  Underlying the judge's decision against MacNutt were her findings that (1) the fire inspector's testimony was speculative, (2) parking and open land for water absorption were not concerns the code was designed to protect or unique to MacNutt, and (3) MacNutt's evidence about open sky and tax increases were based on personal opinion and conjecture.

Standard of review.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002) (rule 56).  "A party seeking summary judgment may satisfy its burden of demonstrating the absence of triable issues by showing that the party opposing the motion will not be able to prove an essential element of its case" (citation omitted).  81 Spooner Rd., LLC, 461 Mass. at 699.  "[P]erson aggrieved" status is an essential element of a zoning appeal because it is jurisdictional.  Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570, 572-573 (2016), and cases cited.  See National Amusements, Inc. v. Boston, 29

6

Mass. App. Ct. 305, 308-309 (1990) (we look to cases decided under G. L. c. 40A, when interpreting the code). Accordingly, Avalony was entitled to summary judgment if she showed by reference to the materials listed in rule 56, unmet by countervailing materials, that MacNutt has no reasonable expectation of proving aggrievement. See Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 32 (2006); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

As an abutter to an abutter, MacNutt enjoys a presumption of aggrievement. See Barvenik v. Board of Aldermen of Newton, 33 Mass. App. Ct. 129, 131 (1992). The presumption "places on the adverse party the initial burden of going forward with evidence," 81 Spooner Rd., LLC, 461 Mass. at 701, either (1) showing that, as a matter of law, the abutter's concerns are not interests the code is intended to protect, or (2) warranting a finding contrary to the presumed fact of aggrievement or "showing that the [abutter] has no reasonable expectation of proving a cognizable harm." Picard, 474 Mass. at 573. Unless and until these showings are made, "the burden of presenting credible evidence to substantiate the allegations of aggrievement" does not shift to the abutter during the summary judgment phase. 81 Spooner Rd., LLC, supra at 703 n.15.

7

A party cannot rely on an absence of evidence from the abutter to overcome the presumption of standing unless the party "seek[s] to discover from [the abutter] the actual basis of their claims of aggrievement" and the abutter "can point to no such evidence." Standerwick, 447 Mass. at 37. See id. at 34-35 (abutter's standing presumed "until the defendant comes forward with evidence to contradict that presumption"); Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 258 (2003) ("To rebut a presumption of a plaintiff's standing as an aggrieved person, a defendant must offer evidence"). MacNutt pointed to such evidence here. The judge appears to have weighed that evidence, but this stage of the litigation "does not require that the factfinder ultimately find a plaintiff's allegations meritorious." Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996). "Because a judge does not engage in fact finding when ruling on cross motions for summary judgment," we review de novo whether Avalony overcame the presumption of standing, without deference to the judge's decision. 81 Spooner Rd., LLC, 461 Mass. at 699.

Discussion. "For the purpose of the summary judgment standing analysis," we have no trouble concluding that MacNutt's concerns about her neighborhood's density, character, and affordability are ones the code is designed to protect. Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass. App. Ct. 685, 688

8

(1994). First and foremost, "[t]he objectives of . . . Article [65] are to provide adequate density controls that protect [Dorchester's] established residential areas." Article 65, § 65-1. Other objectives are to retain and develop affordable housing, "particularly for elderly residents;" to preserve, maintain and create open space; to protect the environment; to promote the most appropriate use of land; "and to promote the public safety, health, and welfare of the people of Dorchester." Id. In furtherance of these goals, and "to maintain, enhance, and promote the character of [Dorchester's] residential neighborhoods in terms of density, housing type, and design; to provide for low- and medium-density multifamily housing appropriate to the existing built environment; and to encourage appropriate development . . . while preventing overdevelopment," Article 65 further established residential subdistricts. Article 65, § 65-7. While three-family homes are allowed in many residential subdistricts, they are not allowed in 2F ones, specifically "to preserve, maintain, and promote two-family neighborhoods, to preserve existing structures, to provide for new infill construction appropriate to the existing fabric, and to allow [only] minor changes to occur as of right." Article 65, § 65-7(2).

Thus, this case is not like Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 214 (2020), on which the

9

judge relied. In Murchison, supra, "there [wa]s nothing to demonstrate that the purpose of Sherborn's dimensional lot width zoning requirement is to control density or overcrowding generally, or to protect an abutter's interests in particular," and no claim was made that the neighborhood was already more dense than applicable zoning regulations allowed. Here, Article 65 was added to the code specifically to address density and overdevelopment in Dorchester's established two-family residential neighborhoods. See Article 65, § 65-1. Where Article 65 gives residents like MacNutt a defined and protected interest in the density and character of their neighborhood, and where the board's decision "allow[s] a change to the character of this established two-family neighborhood perhaps opening the possibility of more dense uses on the lots," Avalony did not by the first path overcome MacNutt's presumption of standing. See Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 120-121 (2011) ("defined protected interest may impart standing to person whose impaired interest falls within that definition" [citation omitted]).

For any burden of production to have shifted to MacNutt, then, Avalony needed "credible affirmative evidence" warranting a finding contrary to the presumed fact of aggrievement or showing that MacNutt has no reasonable expectation of proving a cognizable harm. Picard, 474 Mass. at 573, quoting 81 Spooner

10

Rd., LLC, 461 Mass. at 702. Such evidence could consist of "affidavits of experts establishing that an abutter's allegations of harm are unfounded or de minimis." 81 Spooner Rd., LLC, supra.

Avalony offered the affidavit of McNaughton, who opined based on United States census data that Avalony's addition would mean one or two more cars may park on Minot Street and one or fewer cars may travel on Minot Street during peak times -- not "perceptible increases in traffic" in McNaughton's view. Avalony also offered the affidavit of Christopher, who stated, "Based on the Sun Study [that] the Project will not cast a shadow on [MacNutt's property] for most of the calendar year." To the extent it does, however, McNaughton asserted the effects of the shadows will be "de minimis." Avalony's husband, a painter by trade, provided an affidavit stating that on some unspecified occasion or occasions he "observed stormwater running off from [his] Property" and away from that of MacNutt, while Avalony provided an affidavit stating that she was financially burdened by a mortgage, utilities, childcare, and this litigation.

That Avalony's husband saw stormwater flow away from MacNutt's property, and that Avalony has to pay for a mortgage, utilities, childcare, and litigation because she would like to expand the home she chose to purchase and start a family in, is

11

not "affirmative evidence" warranting a finding that, for MacNutt, the effects of converting a two-family structure on an undersized lot located less than sixty feet away into a triple decker with the capacity for three more adult tenants, each of whom might have cars, would be de minimis. Picard, 474 Mass. at 573, quoting 81 Spooner Rd., LLC, 461 Mass. at 702. By "countervailing materials," Kourouvacilis, 410 Mass. at 716, MacNutt described home insurance increases she already has borne because the assessed value of her home went up by $300,000 in three years, as well as trouble she already has using her own driveway due to traffic congestion in this "neighborhood . . . more dense than the applicable regulations would allow because several lots" on the north side of Minot Street are undersized. Sheppard v. Zoning Bd. of Appeal of Boston, 74 Mass. App. Ct. 8, 12 n.8 (2009) (Sheppard I). To McNaughton and Christopher, the addition of one or two more cars on Minot Street or a few more shadows on MacNutt's yard might be "de minimis," but our caselaw is clear: "additional 'crowding of an abutter's residential property by violation of the density provisions of the zoning by-law will generally constitute harm sufficiently perceptible and personal to qualify the abutter as aggrieved.'" Sheppard v. Zoning Bd. of Appeal of Boston, 81 Mass. App. Ct. 394, 397 n.6 (2012) (Sheppard II), quoting Sheppard I, supra at 12. Because Article 65 was enacted to protect Dorchester residents like

MacNutt from "further intrusions" on the density and character of their neighborhood by overdevelopment, Sheppard I, 74 Mass. App. Ct. at 13 n.9, the affidavits of McNaughton and Christopher did not warrant a finding contrary to the presumption of standing or establish that MacNutt has no hope of proving a cognizable harm.  See Picard, 474 Mass. at 573.

For all these reasons, "the presumption of aggrievement [wa]s not rebutted, [MacNutt] is deemed to have standing, and the case [should have] proceed[ed] on the merits."  81 Spooner Rd., LLC, 461 Mass. at 701.  The judgment is vacated, and the case is remanded for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Meade, Singh & Smyth, JJ.[2]),

Assistant Clerk

Entered:  February 27, 2024.

---

[2] The panelists are listed in order of seniority.

13